**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 28 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ERNEST FRANK CLARK,

      Plaintiff-Appellant,

v.

LAVALLIE; PATRICK; IREULLI;
GALL; PRUYNE; and BASINGER,

      Defendants-Appellees.

No. 99-1082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-S-823)**

---

Submitted on the briefs:[*]

Ernest Frank Clark, *pro se*.
Susan L. Foreman, Boulder, Colorado, for Plaintiff-Appellant.

Thomas L. Strickland, United States Attorney; Mark S. Pestal, Assistant United States Attorney; and Sean Connelly, Attorney, U.S. Department of Justice, for Defendants-Appellees.

---

Before **BRISCOE**, **PORFILIO**, Circuit Judges; and **ROGERS**, District Judge.[**]

---

[*]The parties have requested this case be submitted without oral argument, and we have honored that request and determined the matter on the briefs.

[**]The Honorable Richard D. Rogers, Senior District Judge for the United States District Court for the District of Kansas, sitting by designation.

**PORFILIO**, Senior Circuit Judge.

The sole issue presented in this case is whether Fed. R. App. P. 4(a)(6)[1] trumps

Fed. R. Civ. P. 60(b)[2]. We hold it does and affirm.

After filing a *pro se* legal action in the United States District Court for the District

of Colorado on April 9, 1996, Ernest Frank Clark, a federal prisoner, was transferred

from the Federal Correctional Institution in Florence, Colorado, to a facility in

Manchester, Kentucky. Then on May 11, 1998, Mr. Clark was moved from Manchester

---

[1]Fed. R. App. P. 4(a)(6) states:
> **Reopening the Time to File an Appeal.**
> The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered but only if all the following conditions are satisfied:
>     (A) the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
>     (B) the court finds that the moving party was entitled to notice of the entry of the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and
>     (C) the court finds that no party would be prejudiced.

[2]Fed. R. Civ. P. 60(b) states in part:
> **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment.

to the Federal Correctional Institution in Milan, Michigan. That transfer was not immediately accomplished because of stops at two different institutions, and he ultimately arrived in Milan on June 3, 1998.

On June 5, 1998, the district court in Colorado dismissed Mr. Clark's action. A copy of the judgment entered on June 19, 1998, was mailed to him at Manchester, Kentucky, but not forwarded. On July 20, 1998, Mr. Clark filed a motion for a status conference in the district court, but no action was taken. In December 1998, Mr. Clark wrote the district court to ascertain the status of his lawsuit. On January 18, 1999, he received notice informing him of the dismissal. He then filed a motion seeking relief under Fed. R. Civ. P. 60(b) on February 1, 1999.

Relief was denied, and Mr. Clark appealed to this court *pro se.* In his brief and reply, Mr. Clark sets out the "exceptional circumstances" he believes his situation presented which the district court erroneously overlooked. To the government's suggestions "plaintiff could have provided the district court with his temporary address and immediately checked the status of his case on his return" and that he has not "satisfactorily explained why he waited eight months to learn" of the adverse judgment, Mr. Clark responds he was never told in advance where he would be taken and he did move for a status conference but never received a response.

The government responds Fed. R. App. P. 4(a)(6) was "designed exclusively for situations such as this in which a party did not receive timely notice of entry of

judgment." It asserts the rule was intended to make the 180-day time limit absolute and out of Rule 60(b)'s reach. Relying on ***Zimmer St. Louis, Inc. v. Zimmer Co.***, 32 F.3d 357 (8th Cir. 1994), the government contends permitting Rule 60(b) to trump Rule 4(a)(6) would nullify the notice provision of Fed. R. Civ. P. 77(d)[3].

Because of the significance of this issue, we appointed counsel for Mr. Clark. In her supplemental brief, counsel contends the "more liberal" time limits in Rule 60(b) are recognized as an "extraordinary procedure," ***Brown v. McCormick***, 608 F.2d 410, 413 (10th Cir. 1979), and "grand reservoir of equitable power to do justice in a particular case." ***Pierce v. Cook & Co., Inc.***, 518 F.2d 720, 722 (10th Cir. 1975) (en banc). Counsel asserts Mr. Clark's motion was not only timely under Rule 60(b) but also meritorious, describing in *pro se* fashion the exceptional circumstances that thwarted his ability to receive notice. Further, counsel states the government would not be prejudiced were the court to grant Mr. Clark relief. Its only burden would be the same risks and costs of the appeal had the Bureau of Prisons properly forwarded the notice. She distinguishes ***Zimmer*** on the ground it is inconsistent with ***Wallace v. McManus***, 776

---

[3]Fed. R. Civ. P. 77(d) states in part:
   **Notice of Orders or Judgments.** Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. . . . Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

F.2d 915 (10th Cir. 1985), a case decided before adoption of Rule 4(a)(6). Counsel also argues *Zimmer* should not be regarded as precedential here because it does not involve a *pro se* prisoner.

The answer to this conundrum lies within the mandatory language of Rule 4(a)(6) which gives a district court discretion to reopen the time to file an appeal only upon specific conditions. Moreover, nothing within Rule 4(a)(6) indicates it is permissive or that its limitations may be waived for equitable reasons. The 180-day limitation which governs this case is specific and unequivocal.

We believe *Wallace* is not helpful here because it was decided before the amendment adding Rule 4(a)(6). Consequently, the *Wallace* court's resort to Rule 60(b)'s excusable neglect standard is understandable, but not persuasive. Moreover, when *Wallace* was decided, the less restrictive language of Fed. R. App. P. 4(a)(5) permitted a more lenient treatment of *pro se* cases. 776 F.2d at 916-17.

For similar reasons, we are not inclined to follow or approve *United States v. Brown,* 179 F.R.D. 323 (D. Kan. 1998), relied upon by appointed counsel. In that case, Brown filed a § 2255 motion which the court denied. Because the clerk of the court failed to send Brown a notice of the denial for more than a year, Brown moved for relief under Rule 60(b). Noting that under Fed. R. Civ. P. 77(d) a party's lack of notice does not alter the time period to appeal an order, the court looked to both Fed. R. App. P 4(a)(5) and (6), for direction. Ultimately, although noting Rule 4(a)(6) post-dated

*Wallace*, the court nonetheless interpreted *Wallace* to view 4(a)(5) and (6) as safety valves, and not as exclusive remedies or exclusive means for extending the time to appeal a district court order. "If relief under Federal Rule of Appellate Procedure 4(a)(5) and (6) is unavailable, then rule 60(b) is available to prevent manifest injustice," *id*. at 327, precluding a clerical error from penalizing a *pro se* incarcerated plaintiff. The court further observed a need to distinguish between counseled and uncounseled cases in applying Rule 4(a)(6).

Unlike the *Brown* court, we see no latitude on the clear and restrictive language of Rule 4(a)(6). Like the Eighth Circuit, we agree the addition of that rule "was designed to respond to the circumstances that had prompted courts to use Fed. R. Civ. P. 60(b)(6) to circumvent the deadlines specified by Fed. R. App. P. 4(a)(5)." *Zimmer*, 32 F.3d at 360 (citing supporting cases and authority). We also agree the specificity of Rules 4(a)(6) and 77(d) "precludes the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice." *Id.* at 361.[4] *See also Servants of the Paraclete v. Does*, ___ F.3d ___, Nos. 98-2258, 2337, 2000 WL 194185 (10th Cir. Feb. 3, 2000).

---

[4]In *Lewis v. Alexander*, 987 F.3d 392 (6th Cir. 1993), a post-Rule 4(a)(6) case, the court applied Rule 60(b), and permitted a reopening of the appeal. That case is not helpful here, however, because the court did not address the limitations of Rule 4(a)(6), a fact that has not gone unnoticed in the Sixth Circuit. *See FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683 (6th Cir. 1999). *Also see Zimmer St. Louis v. Zimmer Co.*, 32 F.3d 357, 361 (8th Cir. 1994).

The essence of Rule 4(a)(6) is finality of judgment. While application of that concept infrequently may work misfortune, it is an overriding principle which demands enforcement without distinction between counseled and uncounseled cases. Having reached that conclusion, we need not determine whether Mr. Clark's failure to comply was "excusable neglect."

**AFFIRMED**.