*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0487p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KEITH BOWLES,

        *Petitioner-Appellant,*

    *v.*

HARRY RUSSELL, Warden,

        *Respondent-Appellee.*

No. 04-3262

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-01520—Donald C. Nugent, District Judge.

Submitted: October 25, 2005

Decided and Filed: December 28, 2005

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; and ROSE, District Judge.[*]

---

**COUNSEL**

---

**ON BRIEF:** Paul Mancino, Jr., MANCINO, MANCINO & MANCINO, Cleveland, Ohio, for Appellant. Bruce D. Horrigan, CORRECTIONS LITIGATION SECTION, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

    BOGGS, Chief Judge. This is a case about missed deadlines. At times, they go unnoticed, but sometimes the lapse is fatal. This case presents one of the fatal variety. Petitioner Keith Bowles failed to receive timely notice of the district court's ruling that triggered his appeal period. When he did receive notice, he correctly sought relief under Fed. R. App. P. 4(a). When the district court granted his requested relief but mistakenly offered an erroneous deadline, Bowles chose it and failed to comply with the deadline of February 24, 2004. This court on motion declined to dismiss his appeal. Today, we correct that error and hold that the fourteen-day period of Rule 4(a)(6) of the Federal Rules of Appellate Procedure is not susceptible to extension through mistake, courtesy, or grace.

**I**

    On August 22, 1998, Keith Bowles, Richard Hayden, Damon Anderson, and Jamal Russell drove from Cleveland to Fairport Harbor, Ohio to see a performance at a bar called Hellbusters. The group left

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

the bar early in the morning and drove to nearby Painesville to attend an after-hours party at the Argonne Arms apartment complex. On their way to the party, they passed a bar called Nino's, outside of which they saw Hayden's cousin, Marcus Moore, in some physical distress. Later, after rendezvousing with Moore, they learned from him that he had been jumped and beaten by a group of men from Painesville including Antonio Rymmer.

Bowles, Hayden, Anderson, and Russell agreed to search for Rymmer at the Argonne Arms and extract their revenge. When they found Rymmer, and he was armed, the group decided to delay their plan. Soon after, the group happened upon the victim, Ollie Gipson. Gipson appeared as if he might be armed and, when it became clear that he was not, Bowles, Hayden, and Anderson beat him. The final, deadly, blows were administered by Hayden after Bowles had returned to the car. Gipson died the next day as a result of his injuries. Bowles was indicted on September 4, 1998, for his part in the beating on a charge of felonious assault in violation of Ohio Revised Code § 2903.11, and murder in violation of § 2903.02(B).

In the trial court, Bowles moved for dismissal, arguing that Ohio's Revised Code had created two categories of murder in contravention of the Fourteenth Amendment. *See* U.S. Const. amend. XIV. The court denied the motion and held that the Supreme Court has never held unconstitutional the individual states' ability to enact felony-murder statutes. *See Lockett v. Ohio*, 438 U.S. 586, 602 (1978) (holding "[t]hat states have authority to make aiders and abettors equally responsible, as a matter of law, with principals, or to enact felony-murder statutes is beyond constitutional challenge"). On March 3, 1999, an Ohio jury entered a verdict of guilty on a single count of murder and sentenced Bowles to serve an indefinite term of imprisonment of fifteen years to life in an Ohio correctional facility.

Bowles appealed his case to both the Court of Appeals and Supreme Court of Ohio. Both denied him relief. *See Ohio v. Bowles*, No. 99-L-075, 2001 WL 502042 (Ohio Ct. App. May 11, 2001). The one-year statue of limitations for federal habeas began running when the ninety-day certiorari period ended. *See Abela v. Martin*, 348 F.3d 164, 172 (6th Cir. 2003); 28 U.S.C. § 2244(d)(1) (allowing a one-year statute of limitations on filing from the day a state conviction becomes final).

On September 5, 2002, Bowles filed his federal petition for a writ of habeas corpus. The case was referred to a magistrate judge, who, on May 23, 2003, issued a report and recommendation that the petition be denied. Bowles filed a lengthy objection to the magistrate judge's report, but United States District Judge Nugent, on July 10, 2003, adopted the findings in a short memorandum opinion, additionally denying the petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The order was docketed on July 28, 2003.

On August 6, 2003, Bowles moved for a new trial under Rule 59 or to amend the judgment under Rule 52, objecting to the adoption of the magistrate judge's report without, he argued, de novo review of the findings. *See* Fed. R. Civ. P. 52, 59. The motion was denied on September 9, 2003, the date of the final, appealable order in this case. Accordingly, a timely notice of appeal would have been entered, at the latest, by October 9. *See* Fed. R. App. P. 4(a)(1)(A) (giving thirty days to appeal a final judgment). However, instead of filing his notice, Bowles, remained silent for ninety-four days. All possible avenues of appeal closed during this period, save one. Only Fed. R. App. P. 4(a)(6) allows a party to timely file a notice of appeal ninety-four days after judgment. *See* Fed. R. App. P. 4(a)(1) (requiring a notice of appeal to be filed within thirty days of judgment); Fed. R. App. P. 4(a)(4) (granting thirty days for appeal after the disposal of some motions including those under Fed. R. Civ. P. 59); Fed R. App. P. 4(a)(5) (extending time an additional thirty days for "excusable neglect or good cause").

On December 12, 2003, Bowles moved to reopen the appeal period pursuant to Rule 4(a)(6) of the Federal Rules of Appellate Procedure. Bowles claimed that the order of September 9, in contravention of the Rules, was never served by the court and that he was unaware of the order until December 3, 2003, when he obtained a docket sheet. *See* Fed. R. Civ. P. 77(d) (directing that "[i]mmediately upon the entry of an order or judgment the clerk shall serve a notice"). The parties do not dispute the lack of notice, but Bowles

blames the error on the court while the Warden claims that Bowles was at fault for failing to comply with the requirements imposed by electronic filing. Regardless, Bowles's contention apparently had merit—the district court granted his motion on February 10, 2004. At this point, the district court inexplicably erred in miscalculating and then stating the cut-off date for the notice of appeal. In its marginal order, citing Rule 4(a)(6), the court denied the motion to vacate but granted the motion to reopen, giving Bowles until February 27 to file his notice of appeal. By its explicit terms, the Rule allows for only a fourteen-day extension. A timely appeal thus was required to have been filed by February 24. However, Bowles filed his notice of appeal on February 26, timely under the judge's order, but clearly not in compliance with the Rule.

On March 10, 2004, this court issued a show-cause order, questioning the late filing of the appeal. Bowles filed a response and on April 26, 2004, a motions panel of this court discharged the show-cause order and dismissed the appeal for lack of jurisdiction "as it applies to the July 28, 2004 judgment and the September 9, 2003, order." But, the order continued, "[t]he appeal was timely filed as it applies to the February 10, 2004 ruling." On September 8, 2004, construing the appeal as an application for a certificate of appealability under Fed. R. App. P. 22(b), this court denied a certificate of appealability and Bowles promptly petitioned for a rehearing. His motion for reconsideration was entirely concerned with the merits of his habeas petition denied by the district court. On December 28, 2004, perhaps unaware of the procedural disposition of the appeal, a different motions panel of this court granted Bowles's motion for reconsideration and granted in part and denied in part a certificate of appealability on some of the constitutional issues of the case. The order, which makes no mention of timeliness, states:

> [W]e grant a certificate of appealability on the following issues: whether Bowles was denied a fair trial and his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments by the prosecution's questions to him on cross-examination about the fact that he did not make a statement to the police and by the prosecutor's comments regarding his failure to volunteer a statement to the police.

## II

### A

Respondent Warden argues that lack of subject matter jurisdiction prevents us from hearing the merits of this appeal and that the jurisdictional scope of this appeal should be limited to the marginal order of February 10, 2004, reopening the time for filing an appeal. Petitioner does not offer any argument relating to the jurisdictional problem presented. However, even if the respondent had overlooked this issue, the Federal Rules of Civil Procedure make it incumbent upon this court to dismiss any action when it appears that the court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3); *Janis v. Ashcroft*, 348 F.3d 491, 493 (6th

Cir. 2003).[1] *See also Friends of Crystal River v. EPA*, 35 F.3d 1073, 1077-78 (6th Cir. 1994) (applying de novo review to questions of subject matter jurisdiction).

B

The Federal Rules of Appellate Procedure define the applicable deadlines in the courts of appeals. Fed. R. App. P. 1(a)(1); *see* 28 U.S.C. § 2071 (rules are consistent with acts of Congress). *See also* 28 U.S.C. § 2072(b) ("rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). When properly informed of the judgment, a party has thirty days to file a notice of appeal. Fed. R. App. P. 4(a)(1)(A). A limited extension of the time to file may also be granted upon a party's motion under Rule 4(a)(5). *See Zack v. United States*, 133 F.3d 451, 453 (6th Cir. 1998). Where, as in this case, a party claims that he failed to receive notice of a judgment, Rule 4(a)(6) allows the district court to extend the time afforded to file a notice of appeal:

> (6) Reopening the Time to File an Appeal. The district court may reopen the time to file an appeal *for a period of 14 days after the date when its order to reopen is entered*, but only if all the following conditions are satisfied:
> > (A) the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
> > (B) the court finds that the moving party was entitled to notice of the entry of the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and
> > (C) the court finds that no party would be prejudiced.

Fed. R. App. P. 4(a)(6) (emphasis added)[2]; 28 U.S.C. § 2107. The Appellate Rules underscore the exclusivity of the 4(a)(6) remedy by explicitly excluding it from the blanket Rule regarding extension of other appellate time prescriptions, "For good cause, the court may extend the time prescribed by these rules. . . .[b]ut the court may not extend the time to file a notice of appeal (except as authorized in Rule 4)." Fed. R. App. P. 26(b); *see Rhoden v. Campbell*, 153 F.3d 773, 774 (6th Cir. 1998).

---

[1]The Supreme Court has recently distinguished between rules that govern subject-matter jurisdiction and those that are "inflexible claim-processing" rules. *See Eberhart v. United States*, 126 S. Ct. 403 (2005) (per curiam); *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). For two reasons, we believe this distinction is not applicable to the case at bar. First, in *Kontrick*, the Court found that "[n]o statute, however, specifies a time limit for filing a complaint objecting to the debtor's discharge. Instead, the controlling time prescriptions are contained in the Federal Rules of Bankruptcy Procedure, specifically, Rules 4004(a) and (b) and 9006(b)(3)." 540 U.S. at 448. Second, the petitioner in *Kontrick*, in answering the untimely complaint, never addressed the issue of untimeliness, and thus forfeited the right to rely on the time limits in the Federal Rules of Bankruptcy Procedure. *Id.* at 459–60 ("No reasonable construction of complaint-processing rules, in sum, would allow a litigant situated as Kontrick is to defeat a claim, as filed too late, after the party has litigated and lost the case on the merits").

Similarly, in *Eberhart*, the government opposed the defendant's motion on the merits, ignoring the timeliness problem. Thus, "where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense." 126 S. Ct. at 407. Nor does the court in *Eberhart* identify a specific statute from which Rule 33 could be said to contain an element of subject-matter jurisdiction. *See Kontrick*, 540 U.S. at 453 ("Only Congress may determine a lower federal court's subject-matter jurisdiction.").

In both these ways, the case at bar is distinguishable. The government, did not, nor did it need to, oppose Bowles's Rule 4(a)(6) motion in the district court. Instead, it objected to the timeliness of the appeal in its brief. *See* Br. of Resp't at 1 ("This Court lacks jurisdiction to hear this appeal"). And, in contrast to the situation in *Kontrick*, Congress *has* limited our jurisdiction in the Act of December 9, 1991, Pub. L. 102-198, § 12, 105 Stat. 1623, 1627 (codified at 28 U.S.C. § 2107) ("the district court may . . . reopen the time for appeal for a period of 14 days . . . ."). For these reasons, we think that Rule 4(a)(6) is, in fact, "a prescription[] delineating the classes of cases" that we may hear. 540 U.S. at 455. In addition, the respondent, by objecting in his brief to this court, never forfeited his right to strict adherence to Rule 4.

[2]The rule was amended, effective December 1, 2005. The change requires that notice be pursuant to Fed. R. Civ. P. 77(d) but otherwise the substance of the rule remains the same.

Petitioner moved to reopen pursuant to Rule 4(a)(6) on December 12, 2003. In accordance with the Rules, the motion was filed within seven days of December 5, the date on which petitioner received notice of the final judgment. This is also earlier than 180 days after the judgment, March 7, 2004. Finally, December 5 is not within 21 days of the entry of judgment, September 9. On February 10, 2004, the motion was granted and a marginal order reopened the period for appeal, extending it until February 27, 2004. However, according to the Rule, the new appeal period can only extend fourteen days after the date when the order is entered. Since the order was entered on the 10th, the Rule's outermost deadline would have been February 24. *See* Fed. R. App. P. 26(a) (computing time). Petitioner filed his notice of appeal on February 26, 2004, inside of the deadline stated in the order, but outside of the Rule's deadline.

### III

#### A

Rule 4(a) has been interpreted as both mandatory and jurisdictional by the Supreme Court and this Circuit. *See Browder v. Dir., Dept. of Corrs. of Illinois*, 434 U.S. 257, 264 (1978); *In re Sulzer Orthopedics & Knee Prosthesis Prods. Liab. Litig.*, 399 F.3d 816, 817 (6th Cir. 2005); *Peake v. First Nat. Bank and Trust Co. of Marquette*, 717 F.2d 1016, 1018 (6th Cir. 1983); *Oja v. Dep't of Army*, 405 F.3d 1349, 1358 (Fed. Cir. 2005) (noting that it is "beyond cavil" that 4(a)(6) is mandatory and jurisdictional).

Other circuits have described Rule 4(a)(6)'s limited opportunity to reopen the time for appeal as one that "balances the inequity of foreclosing appeals by parties who do not receive actual notice of a dispositive order against the need to protect the finality of judgments." *See Vencor Hosp., Inc. v. Standard Life and Acc. Ins. Co.*, 279 F.3d 1306, 1309 (11th Cir. 2002) (describing the Rule as limited and exclusive).

According to the Notes of the Advisory Committee on Appellate Rules, the purpose of the 1991 amendment was to provide "a *limited* opportunity for relief in circumstances where the notice of entry of a judgment or order, required to be mailed by the clerk pursuant to [Fed. R. Civ. P. 77(d)], is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal"

*Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 360 (8th Cir. 1994). *See also In re Stein*, 197 F.3d 421, 425 (9th Cir. 1999) (quoting identical language). The Tenth Circuit has found that "the essence" of the Rule is "finality of judgment." *Clark v. Lavallie*, 204 F.3d 1038, 1041 (10th Cir. 2000). The *Clark* court, like the other circuits to have considered the issue, found the 180-day limitation in the Rule to be "specific and unequivocal" *Id.* at 1040. *See Vencor*, 279 F.3d at 1311; *Servants of the Paraclete v. Does I-XVI*, 204 F.3d 1005, 1010 (10th Cir. 2000); *see also* 16A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3950.6 at 228 (1999) ("Rule 4(a)(6) provides the exclusive means for extending appeal time for failure to learn that judgment has been entered. Once the 180-day period has expired, a district court cannot rely on the one-time practice of vacating the judgment and reentering the same judgment in order to create a new appeal period"). "While application of that concept infrequently may work misfortune, it is an overriding principle which demands enforcement." *Clark*, 204 F.3d at 1041. "Moreover, nothing within Rule 4(a)(6) indicates it is permissive or that its limitations may be waived for equitable reasons." *Id.* at 1040 (referring specifically to the 180-day limit).

#### B

Counseling a contrary and more liberal interpretation of the Rule is a line of Supreme Court cases employing an equitable interpretation of appeals time limits, starting with *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962) (per curiam). In *Harris*, the judgment of the trial court became final while the lead member of the litigation team was on vacation in Mexico. *Id.* at 215–16. The trial counsel in the United States was without direction about whether or not an appeal should be filed, so he moved for an extension to the regular thirty-day limit for filing a notice of appeal pursuant to then Fed. R. Civ. P. 73(a), now Fed. R. App. P. 4(a)(5)(A)(ii), allowing an extension where "that party shows either

excusable neglect or good cause." *Id.* at 216. The motion was granted, an extra two weeks prescribed, and the notice of appeal was timely filed. *Ibid.* On appeal, however, the Seventh Circuit held that the movant had not met the statutory standard under Rule 73 for "excusable neglect based on a failure of a party to learn of the entry of the judgment," and that jurisdiction was thus lacking. *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 303 F.2d 609, 611 (7th Cir. 1962) (quoting Fed. R. Civ. P. 73(a)). The Supreme Court reversed, noting the "obvious great hardship to a party who relies upon the trial judge's finding," and held that these decisions should be given "great deference." 371 U.S. at 217. *Harris's* closing language contains a phrase that has come to identify this line of cases: "Whatever the proper result as an initial matter on the facts here, the record contains a showing of *unique circumstances* sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling." *Ibid.* (emphasis added). Thus, in *Harris*, all action was within the relevant time limits. The only quarrel was over the effect of a possibly mistaken substantive ruling on which counsel relied.

*Harris* was soon followed by *Thompson v. INS*, 375 U.S. 384 (1964) (per curiam). In *Thompson*, the trial court explicitly accepted, and the government did not object to, the timeliness of a motion for a new trial that was actually two days late. *Id.* at 386. The motion was denied and a notice of appeal was filed that was timely with respect to the most recent motion, but not as to the original judgment. *Ibid.* The court of appeals dismissed the notice as untimely. *Thompson v. INS*, 318 F.2d 681, 684 (7th Cir. 1963); 375 U.S. at 385. The Supreme Court, however, relying on *Harris*, *supra,* reversed:

> The instant cause fits squarely within the letter and spirit of *Harris*. Here, as there, petitioner did *an act which, if properly done, postponed the deadline* for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal. Accordingly, in view of these 'unique circumstances,' we . . . remand the case to . . . be heard on the merits.

*Thompson*, 375 U.S. at 387 (quoting *Harris*, 371 U.S. at 217) (emphasis added, citation omitted). Four justices dissented in *Thompson*, finding that it was not analogous to *Harris*. Speaking through Justice Clark, they noted that the court in *Thompson*, unlike the court in *Harris* "had no jurisdiction to pass upon the untimely motions," ten days having already elapsed. *Id.* at 389. Further, they accused the majority of extending *Harris* into a context where "excusable neglect" is neither mentioned nor alleged, making the standard of "unique circumstances" meaningless. *Ibid. Accord, Wolfsohn v. Hankin*, 376 U.S. 203 (1964) (per curiam) (extending time to move for a rehearing where extension was granted within the statutory deadline).

The most recent, and only subsequent, decision to discuss *Thompson* is *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989). There, the court held that a postjudgment motion for prejudgment interest is a motion under Fed. R. Civ. P. 59 to alter or amend the judgment, and that it operates with Fed. R. App. P. 4(a)(4) to vitiate any notice of appeal filed while the motion is pending. *Id.* at 177. Even though the litigants claimed that the district court had led them to believe that their notice of appeal, made during the pendency of their Rule 59 motion, was timely, the Court refused to apply *Thompson* to reverse the court of appeals. *Ibid.* The Court made two important statements. First, it stated that *Thompson* required an "affirmative[] represent[ation]" by the district court. *Id.* at 178. Second, it severely limited *Thompson* and stated that *Thompson*, "applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Ibid.*

This court has recognized the "unique circumstances" doctrine of *Thompson*. *See, e.g., Lawrence v. The Teamsters*, 320 F.3d 590, 593 (6th Cir. 2003) (excluding court clerks and limiting reliance to statements by judges)*; Birrell v. Brown*, 867 F.2d 956, 957 (6th Cir. 1989) (allowing extension of appeal

period before 1991 amendment to Fed. R. App. P. 4). Yet, it appears that this specific fact situation has not been considered by this, or any other, circuit.

C

In comparing this case to the available precedents, we note that the circumstances here fall outside of the test formulated in *Osterneck*, that *Thompson* applies "only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck*, 489 U.S. at 170. As in *Osterneck*, "that is not the case here." *Ibid.* First, petitioner's act did not attempt to postpone a deadline for filing his appeal; it was to move for a reopening of the appeal period so that he might file his untimely notice of appeal. Second, it was, in fact, the district court here that performed the improper act and purported to extend the filing date beyond what was permitted by the Rule. Clearly the district court is not a party. Additionally, the chronological order of the actions is distinct from those in *Osterneck*. The rule in that case requires that judicial assurances follow the actions of the party. Here, in contrast, the judicial assurance precedes the party's act. Finally, petitioner received no assurances from the district court that his notice of appeal was timely. Nor, as we explain below, did this court provide any meaningful assurance that the notice, with regard to any of the merits in the case, was timely. We believe that *Osterneck's* language to limit the reach of *Thompson* is applicable in this case. If *Thompson* is, in fact, a doctrine of "unique circumstances," then it does not apply to the case at bar.

Additionally, considering policy, the *Harris* line of cases operates to excuse neglect on the part of the litigant, not on the part of the court. They are concerned with the unfairness and "obvious great hardship" of an appeals court reversing a trial court's decision to accept the negligent acts of a litigant, not with the negligent acts of the court itself. *Harris*, 371 U.S. at 217. They are therefore distinguishable through both their facts and the policies they promote. All these cases predate the 1991 amendments to the Rules of Appellate Procedure which, we believe, further undermine any argument for their liberal application in this situation. Bowles's situation is clearly contemplated and treated by the 1991 addition of Rule 4(a)(6). In the words of the Advisory Committee:

> The amendment provides a limited opportunity for relief in circumstances where the notice of entry of a judgment or order, required to be mailed by the clerk of the district court . . . is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal. The amendment adds a new subdivision (6) allowing a district court to reopen for a brief period the time for appeal upon a finding that notice of entry of a judgment or order was not received from the clerk or a party within 21 days of its entry and that no party would be prejudiced.

Advisory Committee Note to 1991 Amendment to Fed. R. App. P. 4.

We believe that the truly relevant cases are those like *Clark* and *Zimmer*—and that the fourteen-day period in Rule 4(a)(6) should be treated as strictly as the 180-day period in that same Rule. The "limited opportunity for relief" contemplated by the Rule includes both enumerated periods. Our concerns for finality and economy and the Rule's historical function of relieving unfairness in a single factual situation by providing a set method of relief support this holding. As outer limits, the fourteen-day and 180-day periods are analogous. As one commentator noted, "The new paragraph (6) is explicit on the [14-day] point." David D. Siegel, *The Recent (Dec. 1, 1991) Changes in the Federal Rules of Civil Procedure*, 142 F.R.D. 359, 379 (1992).

**IV**

As a final matter, we must determine whether the doctrine of the law of the case and the history of this litigation prevent us from recognizing the jurisdictional defect and thus require us to consider the merits. As the history above makes clear, there has been a substantial amount of activity in the court of appeals that

could support the petitioner's view that the merits are properly before us. However, as we discuss below, this court has never held that jurisdiction is proper in this case. Rather, when the issue of jurisdiction has been properly before us, we have consistently found it to be lacking.

> The law of the case, like issue preclusion, or collateral estoppel, prevents the relitigation of an issue once there has been a judgment on the merits. Later disputes concerning that issue are considered foreclosed in any subsequent suit.
>
> > The doctrine of the law of the case is similar in that it limits relitigation of an issue once it has been decided, but the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages.

18 Moore's Federal Practice, § 134.20 (Matthew Bender 3d ed.). "The gist of the [law of the case] doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Int'l Union of Operating Eng'rs, Local Union 103 v. Indiana Const. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir.1991)); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). "The law of the case doctrine generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings." *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003)

Further, the doctrine applies only to issues that have been decided explicitly (or by necessary implication) by a court. *Ibid.* A court need not elucidate or explain its decision, but it must "decide[] upon a rule of law." *Christianson*, 486 U.S. at 817; *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (applying preclusive effect where issue was "*determined* by a valid and final judgment") (emphasis added); *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (finding an abuse of discretion where law of the case was applied and, after "careful review," the issue was never actually decided below); *In re Big Rivers Elec. Corp.*, 355 F.3d 415, 443 (6th Cir. 2004) (noting that a decision of a court requires an order); *accord Amelkin v. McClure*, 330 F.3d 822, 828–29 (6th Cir. 2003). Finally, "we recognize that the law of the case doctrine is discretionary when applied to a coordinate court or the same court's own decisions." *Bowling v. Pfizer, Inc*, 132 F.3d 1147, 1150 (6th Cir. 1998) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990)); *See Christianson*, 486 U.S. at 817 (acknowledging the limits of the doctrine in situations of clearly erroneous rulings); *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677–78 (6th Cir. 2002) (doctrine is discretionary when a court reviews its prior erroneous decision); *Perillo v. Johnson*, 205 F.3d 775, 780–81 (5th Cir. 2000) (doctrine is a matter of judicial discretion rather than judicial power when a court is reviewing its own prior decision).

Accordingly, we look to the prior decisions and orders of this court to determine if the issue of jurisdiction was actually decided in a final judgment. Only the order of April 26, 2004, addresses the issue of petitioner's untimely notice of appeal. That order is almost entirely devoid of any language even suggesting a decision of this court that jurisdiction for this appeal should be sustained. Only the last sentence, discussed below, could support a positive outcome for the petitioner. The entire discussion of the order supports its conclusion that the appeal be dismissed. Specifically, the appeal is dismissed as it relates to the judgment of July 28 and the order of September 9, 2003. Quizzically, however, the order continues to state, in its last sentence, that the appeal is timely as to the February 10, 2004, ruling.

However, the only appealable issues decided in the court below were the judgment to deny the granting of the writ, and the denial of petitioner's motion to reconsider that judgment. The April 26, 2004, order of our court explicitly states that there is no jurisdiction with respect to those issues. It isolates the February 10 ruling extending time to appeal as the sole appealable issue that this court can hear. Yet, when the merits adjudication is removed from the set of appealable issues, a complete absence of subject matter remains. Additionally, why would, or could, the petitioner appeal the February order when its outcome was favorable to him? We leave this question unanswered. We hold that the final sentence in the April 26 order

was surplusage, that it added no meaning to the order and, therefore, it cannot be construed as a decision of this court. Because this court has not made any decision that is contrary to our ruling today, and because the doctrine of the law of the case is prudential and not jurisdictional, we hold that since the April order is, where explicable, consistent with our reasoning today, the doctrine of the law of the case is not upset in any cognizable way.

**V**

We therefore hold that this court is without jurisdiction to consider Bowles's appeal. Accordingly, this appeal is **DISMISSED**.