NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0761n.06
Filed: October 26, 2007

Case No. 05-6560

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RAYMOND L. COVINGTON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| DAVID G. MILLS, Warden, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER and GRIFFIN, Circuit Judges; ACKERMAN[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge.  Petitioner Raymond L. Covington appeals the district court's dismissal of his 28 U.S.C. § 2254 petition for habeas corpus.  Covington cites five instances of ineffective assistance of trial counsel that warrant reversal of the dismissal of his petition:  (1) counsel's failure to investigate the circumstances of a letter challenging the credibility of the State's key witness; (2) counsel's failure to subpoena Covington's co-defendant, whose testimony would have supported Covington's explanation of events; (3) counsel's failure to enhance a tape-recorded conversation between Covington and the State's key witness; (4) counsel's failure to object to the handwritten amendment of Covington's indictment; and (5) counsel's failure to appropriately advise Covington concerning whether he should testify.  Because Covington provides

_____

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

no basis on which to grant habeas relief, we affirm the district court.

## I. BACKGROUND

The following facts are taken from Covington's direct appeal to the Tennessee Court of

Criminal Appeals. *See State v. Covington*, No. 01C01-9109-CC-00267, 1992 Tenn. Crim. App.

LEXIS 392 (Tenn. Crim. App. May 13, 1992).

> This case concerns the killing of Ernie Anglin on April 14, 1979. Bonnie Parker, the mother of Mr. Anglin's daughter, was living with Mr. Anglin on the date of his death. According to her testimony, two masked men entered their house at approximately 9:30 p.m. Brandishing weapons, they took a substantial amount of cash from Anglin's pants pocket and then led him out of the house while pointing a gun at his back. The victim's four-year-old daughter was a witness to this robbery and abduction. The little girl was crying hysterically while her mother, Ms. Parker, desperately sought help. She called a friend; but before anyone arrived, Ms. Parker heard two gunshots from across the street. Shortly thereafter, Ernie Anglin was found dead on the ground with two gunshots to his body.

> Sheriff's investigations led to Greg Hill as a possible suspect. [In July 1990,] Hill made a statement to law enforcement officers implicating himself, the appellant, and a man named Ronnie Brown. Hill agreed to allow himself to be wired and to engage in a conversation with the appellant. The conversation was videotaped and recorded. During the taped conversation, the appellant admitted robbing and shooting Anglin. The court reporter had difficulty hearing every word of the tape and would certify the transcript of the recording as a "best effort" only. According to the court reporter, a portion of the tape was as follows:

> Mr. Hill: Hey, Ray-Ray?

> Mr. Covington: What?

> Mr. Hill: There's something I always wanted to ask you.

> Mr. Covington: What?

> Mr. Hill: That night you shot old Ernie, that night, --

> Mr. Covington: Uh-huh.

> Mr. Hill: -- You didn't mean to shoot the mother-fucker, did you?

2

Mr. Covington:  No, I told you he backed into the gun.

Mr. Hill:  He backed into the shotgun?

Mr. Covington:  Oh, you know, I had him, and we was walking out with him.  Right?  Right?  I was behind him and he was in front of me.

Mr. Hill:  uh-huh.

Mr. Covington:  And he stopped.  And I'm looking back, and not paying attention to him, and when he stopped, I'm, like that there, jammed into him, and the mother-fucker went off. * * * Think I was trying to kill him?  No, I wasn't trying to kill him.

Mr. Hill:  Well, see, somebody, they thought, at one time that Ronnie had a contract out on him.

Mr. Covington:  Yeah.

Mr. Hill:  You know, Ronnie was going to get some money off of him.

Mr. Covington:  You don't think I wanted to kill him?  Shit.

Mr. Hill:  I know that's right.

Mr. Covington:  I done got what I wanted and got out of there.

Mr. Hill:  I know that's right.

Mr. Covington:  No, that mother-fucker stopped, man.  He stopped.

Mr. Hill:  I figured that what it was.

Mr. Covington:  When he stopped--

Mr. Hill:  An accident.

Mr. Covington:  When he stopped, I nudged him, 'cause, hey, it scared me. . . . Yeah, he stopped and he nudged that shotgun, and when it went off, you talking about--got where I panicked.  It scared me, more than it did--well, it didn't scare him, 'cause he was through.

3

Mr. Hill: (Laughter.) It was all over for him.

Mr. Covington: It scared the hell out of me.

Mr. Hill: He was dead then.

Mr. Covington: That mother-fucker went off twice, quickly.

Mr. Hill: I thought I heard two shots.

Mr. Covington: That's an automatic. That's one of them automatics.

The videotape as well as the taped recorded conversation was played for the jury.

Greg Hill testified at trial. In March of 1979, he, Ronald Brown, and Ray Covington made plans to rob Ernie Anglin, who was known to carry large sums of money. They selected April 14th as the date of the robbery. They met at Brown's apartment at 7:00 p.m. to discuss the robbery. They left the apartment carrying a shotgun, a pistol, and two ski masks. Hill testified that at approximately 8:30 he dropped the other two off near Anglin's house. Thirty minutes later he heard two shots. Brown and Covington came running back to the car and as they got in, Hill drove off. Brown and Covington were arguing. Brown stated, "you done killed him"; and Covington replied that he didn't mean to, that the gun went off accidentally. Hill testified about wearing the hidden microphone and engaging in a conversation about the homicide with the appellant. Hill further testified that the excerpts from the transcript [as set forth above] essentially represent the conversation that he remembers.

The appellant testified on his own behalf. His explanation of the events of April 14, 1979, is vague and somewhat confusing. A summary of his testimony is as follows: Hill and Riley Cooper went to the appellant's house to get a shotgun the appellant had borrowed from Ronnie Brown. The appellant refused to give the gun to the two men, but said he would go with them to take it back to Brown. Hill drove to a spot near Ernie Anglin's house; Hill and Cooper got out of the car; and appellant stayed in the car. He contended that he was unaware of the reason for stopping near Anglin's house. The appellant then got out and took the path the other two men had taken. He saw them with Ernie Anglin. Cooper was behind Anglin with a shotgun. The appellant contends that he [appellant] bumped into the shotgun and it went off twice, and then they all ran back to the car.

*Id.* at *1-6.

The jury convicted Covington of felony murder and robbery by use of a deadly weapon. He

4

received a life sentence for the murder and a ten-year sentence, to run concurrently, for the robbery. On direct appeal, the Tennessee Court of Criminal Appeals affirmed Covington's convictions.

Covington then pursued state post-conviction relief, alleging ineffective assistance of trial counsel. Following the dismissal of his post-conviction petition, he appealed to the Tennessee Court of Criminal Appeals, which affirmed the dismissal of Covington's petition. Covington then submitted to the Tennessee Supreme Court an application for discretionary review, which the Tennessee Supreme Court denied.

On January 24, 1997, Covington filed a pro se petition for habeas corpus relief. Counsel was appointed and filed an amended petition on February 17, 1998. Covington's petition alleged, among other claims, the ineffective assistance of trial counsel. In 2002[1], the district court dismissed eight ineffective assistance subclaims as procedurally defaulted because Covington failed to present them to the Tennessee Supreme Court in his application for discretionary review: trial counsel's failure (1) to request discovery; (2) to investigate the case; (3) to develop a coherent theory of defense; (4) to seek expert assistance to enhance the quality of a tape recording that was received in evidence; (5) to provide sound advice to Covington as to the exercise of his right to testify; (6) to object to an improper jury instruction on reasonable doubt; (7) to raise or preserve the issue of sufficiency of the evidence; and (8) to object to a handwritten amendment of the indictment.

On appeal, we reversed, concluding that Covington had fairly presented four instances of ineffective assistance to the Tennessee Court of Criminal Appeals, and remanded with instructions

---

[1]In March of 1998, the district court dismissed Covington's petition, without prejudice, because it construed the petition as a successive habeas petition. A panel of this Court reversed the dismissal and remanded to the district court with instructions to consider Covington's habeas petition on the merits. *See Covington v. Mills*, No. 98-5879, 1999 U.S. App. LEXIS 2002 (6th Cir. Feb. 4, 1999).

for the district court to consider on the merits those four instances of ineffective assistance: trial counsel's (1) failure to investigate the case; (2) failure to seek expert assistance to enhance the quality of a tape recording that was received into evidence; (3) failure to provide sound advice to Covington as to the exercise of his right to testify; and (4) failure to object to a handwritten amendment of the indictment. *Covington v. Mills*, 110 F. App'x 663, 665-66 (6th Cir. 2004).

On September 9, 2005, the district court dismissed the petition. Covington timely noticed an appeal, and the district court subsequently issued a Certificate of Appealability as to all four instances of ineffective assistance.[2]

## II. ANALYSIS

We review *de novo* the district court's denial of Covington's petition for writ of habeas corpus. *Clinkscale v. Carter*, 375 F.3d 430, 435 (6th Cir. 2004). An "ineffective assistance of counsel claim is a mixed question of law and fact, for which district-court determinations are subject to *de novo* review." *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

Because Covington filed his habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to this case. Section 2254(d) provides that

---

[2]The State argues that we should find two instances of Covington's ineffective assistance claim—the amending of the indictment and Covington's testifying—procedurally defaulted even though our prior remand directed the district court to consider on the merits these two instances of ineffective assistance. While the State acknowledges that normally the law of the case applies, it argues that we should not apply the doctrine here. "'The [law of the case] doctrine precludes our reconsideration of the [previously decided issue] unless one of three "exceptional circumstances" exists,'" *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 767 (6th Cir. 1989) (citation omitted): "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice," *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). The law of the case doctrine is discretionary "when applied to a coordinate court or the same court's own decisions." *Bowles v. Russell*, 432 F.3d 668, 677 (6th Cir. 2005) (internal punctuation and citation omitted). Because the State has failed to demonstrate how any of the three exceptional circumstances applies here, we decline to bypass the law of the case established by our prior opinion.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In order to establish ineffective assistance of counsel, Covington must demonstrate both components of the claim:

First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When determining prejudice, the Court must consider the errors of counsel in total, against the totality of the evidence in the case." *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 695-96).

On appeal, Covington raises five instances of ineffective assistance of trial counsel. First, prior to trial, Covington provided trial counsel with a letter from Pete Bondurant, an inmate at the Lawrence County Jail where Hill also was incarcerated, in which Bondurant stated that Hill was bragging to inmates about pulling a fast one on the district attorney's office. The letter, dated February 22, 1991 (shortly before the start of Covington's trial), read:

Tell Ray-Ray [Covington] that Mother-Fucker Hill is sitting in the Second Drunk Tank of the Lawrence County Jail reviewing notes [District Attorney] Bottoms gave him yesterday. Trusttees told me they were all over the fucking place. Hill told me "He wasn't going to take no fall so long as the D.A. was a Sucker." Man that Motherfucker is Treacherous.

7

*Covington v. Mills*, No. 1:97-0013, 2005 U.S. Dist. LEXIS 33022, at *14 (M.D. Tenn. Sept. 9, 2005). Covington alleges that trial counsel failed to investigate the letter: he did not interview Bondurant or the inmates mentioned in the letter, nor did trial counsel subpoena Bondurant (or anyone else who might have information regarding this letter or Hill's statements).

Second, Covington argues that trial counsel was ineffective for failing to subpoena Ronnie Brown (and Brown's alibi witnesses) who would testify that Ronnie Brown was not present at Anglin's house that night — directly contradicting Hill's testimony that Brown participated in the robbery and killing of Anglin. Third, Covington argues that counsel was ineffective for failing to enhance the tape-recording of his conversation with Hill because an enhancement "may have revealed that the words were different than those transcribed, in a way helpful to the defense." Appellant's Br. 32.

Fourth, Covington argues that he did not consent to the handwritten amendment of his indictment, and trial counsel was ineffective for failing to object to the amendment. And fifth, Covington argues that his trial counsel was ineffective because he failed to explain to him Tennessee's corroboration rule (a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice), which meant that Covington's own testimony could be used to corroborate Hill's testimony that Covington participated in Anglin's robbery/murder. Nor did trial counsel discuss the amendment of the indictment with him. Covington claims that because of these failures on the part of his counsel, he believed that the State was required to prove that he deliberately or with premeditation killed Anglin, and he therefore testified in order to show that the shooting was accidental. Covington contends that had he known any of this, he would not have testified.

8

At the outset, we conclude that Covington's second subclaim — trial counsel's failure to subpoena Brown — is not properly before us. Covington labeled this subclaim as an independent subclaim in his habeas petition ("C. Counsel Failed to Seek or Subpoena Exculpatory Witnesses"), and it was not included in our order of remand to the district court. The district court, therefore, did not consider this claim on its merits, and we will not address it for the first time on appeal.

Covington does not challenge the legal standard applied by the Tennessee Court of Criminal Appeals to his claims of ineffective assistance of counsel; rather, he quarrels with its application of the law to his facts. Applying *Strickland*, the Tennessee Court of Criminal Appeals concluded that trial counsel's decision not to call Bondurant to testify was strategic, and therefore not deficient:

> Trial counsel also explained his decision not to call Pete Bondurant as a witness. Bondurant had written a letter to his brother, Pat, in which he claimed that Hill had said that "he wasn't going to take no fall so long as the D.A. was a sucker." While this statement would have cast doubt upon the truthfulness of Hill's testimony, trial counsel was concerned about the credibility of the Bondurants; both were in jail on second degree murder charges at the time of the communication. Pete Bondurant would have been fair game for impeachment by his prior criminal record. Trial counsel believed that any possible success in the trial hinged upon the credibility of the defense and that the Bondurant participation presented a risk to that strategy.

*Covington v. State*, No. 01C01-9408-CC-00286, 1996 WL 10084, at *2 (Tenn. Crim. App. Jan. 11, 1996). We note as well that, even without further pursuing the Bondurant letter, for example, by interviewing the prison trustees mentioned in the letter, trial counsel was able to impeach Hill at trial. On cross examination, Hill affirmed that he would be "willing to say anything to get out of jail"; Hill admitted that he "played crazy" in jail in an effort to get out; and trial counsel questioned Hill about his criminal record (which included forging his father's name on checks). Covington cannot show prejudice from his trial counsel's decision not to pursue Bondurant or the letter.

Likewise, the Tennessee Court of Criminal Appeals concluded that trial counsel's decision

9

not to enhance the tape was strategic: "[trial counsel] believed that a more accurate transcript might have further incriminated the petitioner. The poor quality of the tape offered the petitioner an opportunity to impeach Hill about the tape." *Id.*

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The Tennessee court's conclusions were not an unreasonable application of, nor contrary to, *Strickland*.

Hill's remaining instances of ineffective assistance — the amendment to the indictment and counsel's alleged failure to explain to Covington the ramifications of that amendment with regard to Covington's testifying at trial — fail because he cannot show prejudice resulting from trial counsel's performance. Because the state courts did not address these subclaims, we cannot review a decision to determine whether it is an unreasonable application of, or contrary to, Supreme Court precedent. *See Clinkscale*, 375 F.3d at 436 ("In this case, no state court has adjudicated the merits of Clinkscale's ineffective assistance claim. Therefore, the deferential standard of review set forth in section 2254(d) is inapplicable."). Instead, we review the remaining subclaims to determine if Hill's trial counsel was ineffective under *Strickland*'s standards. *See id.* at 442 (Though *de novo*, "[o]ur review of Clinkscale's ineffective assistance claim is governed by the familiar two-prong test set forth in *Strickland*.").

Covington was indicted for first degree murder, in violation of Tenn. Code Ann. § 39-2-202. He claims that his counsel was ineffective because he failed to object to the handwritten amendment to the indictment, which deleted the premeditated murder language and substituted felony-murder

10

language — either of which constituted first degree murder. Covington concedes that this claim is foreclosed by our decision in *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977), but argues that this result is fundamentally unfair. We disagree. Under Tennessee's 1979 first degree murder statute, the State could prosecute first degree murder by establishing premeditated murder, i.e., "common law" murder, or by establishing that the defendant committed the murder during the perpetration of a felony, such as robbery. The intent to commit the felony served as the legal equivalent for the intent required for premeditation. The amendment of the indictment, which was procedurally proper under Tennessee law, *see* TENN. R. CRIM. P. 7(b)(2), did not add or change the offense with which Covington was charged, nor did the amendment deprive him of notice of the charges he faced. As was the case in *Blake*, Covington suffered no prejudice as a result of the amendment to the indictment.

Finally, Covington cannot show prejudice as a result of his counsel's failure to explain to him the ramifications of that amendment. Even without Covington's testimony, the jury had before it Hill's testimony, the taped conversation between Hill and Covington, and a "best effort" transcript of that conversation — all of which indicated that Covington was involved in Anglin's robbery and death.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

11