RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0009p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

HATTIE TANNER,

                 *Petitioner-Appellant,*

    *v.*

                           No. 12-2114

JOAN YUKINS,

                 *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:04-cv-71155—Victoria A. Roberts, District Judge.

Argued: February 19, 2013

Decided and Filed: January 20, 2015

Before: DAUGHTREY, GIBBONS, and DONALD, Circuit Judges

_____

## COUNSEL

**ARGUED:** Allyson A. Miller, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, for Appellant. Raina Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Allyson A. Miller, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC, Birmingham, Michigan, Michael D. Bossenbroek, WACHLER & ASSOCIATES, P.C., Royal Oak, Michigan, for Appellant. Raina Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

       DAUGHTREY, J., delivered the opinion of the court in which DONALD, J., joined. GIBBONS, J. (pp. 14–18), delivered a separate dissenting opinion.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge.  This appeal reaches us in an unusual posture, following over ten years of litigation in two different actions in federal court that grew out of petitioner Hattie Tanner's conviction in Michigan state court for first-degree felony murder in 2000.  After exhausting her state-level appeals, Tanner filed a habeas corpus petition in district court that was denied in November 2005.  Proceeding *pro se*, Tanner's effort to file a timely notice of appeal was thwarted by guards at the prison where she was incarcerated, and the notice was filed one day late.  We dismissed the appeal, finding that the 30-day time period for appeal was mandatory and jurisdictional.  Tanner subsequently filed a civil rights lawsuit under 42 U.S.C. § 1983, claiming that the guards violated her right of access to the courts, and won a jury verdict awarding monetary damages.  On the basis of that verdict, Tanner next filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), asking the district court to vacate and reinstate its judgment dismissing her habeas petition in the interest of justice, thereby restarting the 30-day period to appeal.  The district court denied Tanner's motion, holding that it lacked jurisdiction to grant a motion that would effectively enlarge the time within which an appeal is permitted under Federal Rule of Appellate Procedure 4(a)(1), and that even if the court did have jurisdiction to grant relief, it would deny the motion on its merits. We now reverse the district court's judgment and remand the case to the district court to revive the 30-day period in which to file a notice of appeal in the habeas action.

## FACTUAL AND PROCEDURAL BACKGROUND

Hattie Tanner was convicted of the 1995 armed robbery and stabbing death of Sharon Watson, a bartender at Barney's Bar and Grill in Calhoun County, Michigan, and was sentenced to life in prison without parole for the crime of first-degree felony-murder.  On direct appeal, the Michigan Court of Appeals reversed Tanner's conviction, finding that the trial court had violated Tanner's constitutional right to due process by failing to provide her with DNA and serology experts.  *People v. Tanner*, 660 N.W.2d 746, 767 (Mich. Ct. App. 2003).  The Supreme Court of

Michigan subsequently reversed the appeals court and remanded the case for reinstatement of Tanner's conviction. *People v. Tanner*, 671 N.W.2d 728, 731 (Mich. 2003).

Tanner then filed a federal habeas petition that the district court dismissed on its merits, entering judgment on November 8, 2005. After the dismissal, Tanner, who is functionally illiterate, sought assistance from a prison writ-writer with whom she met for the first time on November 15, 2005. Through this legal assistant, Tanner asked the prison to release a certificate of account activity, which she was required to append to her motion for leave to file *in forma pauperis*. The legal assistant did not receive that document until December 5, 2005, at which time Tanner's prison housing unit was on lockdown due to a misplaced set of keys. The legal assistant scheduled a "call-out" for December 6, so that Tanner could sign the papers that he had prepared and file them within the 30-day appeal period under Federal Rule of Appellate Procedure 4(a)(1)(A). Tanner told two prison guards that she needed to go to the law library to pick up legal papers to meet a filing deadline, but the guards refused to let her go, telling her, "Too bad," and threatening her with solitary confinement if she did not return to her cell. After the lockdown was lifted on the afternoon of December 8, Tanner retrieved the papers, signed the notice of appeal, and delivered it to the mailroom for handling as expedited legal mail the following day. Her notice of appeal was considered filed when it reached the mailroom on December 9, which was 31 days after the district court entered judgment.

Apparently unaware that Tanner's notice of appeal was untimely, the district court clerk's office processed her notice of appeal, and the district judge granted her a certificate of appealability on December 23, 2005, permitting Tanner to appeal two of her habeas claims: that the state trial court violated her right to due process when it denied her request for DNA and serological experts and that there was insufficient evidence to convict her of felony-murder. Tanner's habeas appeal was docketed with this court on January 9, 2006, beyond the last day (January 7) on which Tanner could have timely requested an extension of the 30-day period for filing a notice of appeal if she had been notified by the district court clerk or the judge that her notice of appeal was late. *See* 28 U.S.C. § 2107(c); Fed. R. App. P. 4(a)(5)(A)(i). Instead, we delivered the bad news: on January 20, we issued a show-cause order directing Tanner to explain why her appeal should not be dismissed for lack of jurisdiction due to her failure to appeal within

the statutory 30-day period set out in Rule 4(a)(1)(A). This order was the first notice to Tanner that there was a procedural problem with her appeal. She responded with an affidavit in which she explained that the guards at her prison had wrongfully prevented her from timely filing her notice of appeal. We nonetheless dismissed Tanner's appeal for lack of jurisdiction, finding that the notice of appeal was untimely.

On October 26, 2007, citing 42 U.S.C. § 1983 and claiming a constitutional violation, Tanner filed a civil rights action against the guards who had prevented her from timely filing her notice of appeal during the lockdown, alleging deliberate interference with her right of access to the courts. In March 2012, a jury concluded that the guards' actions wrongfully had in fact caused Tanner's late-filed notice of appeal. Based on that determination, the jury awarded Tanner $20,000 in compensatory damages and $7,000 in punitive damages. The district court entered judgment on the verdict, and the defendants did not appeal.

Less than two months after the verdict, Tanner returned to district court, filing a motion for relief from judgment in her habeas action pursuant to Federal Rule of Civil Procedure 60(b)(6), which permits a district court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief," other than the specific grounds listed in Rule 60(a)(1)-(5). *See* Fed. R. Civ. P. 60(b)(6). Tanner argued that "it would be a miscarriage of justice" if the district court permitted the prison guards' conduct—verified as unconstitutional by the jury's verdict in her civil rights action—to cause her to lose her right to appeal. In her motion, she asked the district court to vacate its judgment dismissing her habeas petition and to reinstate that order, thereby restarting the 30-day period of time for filing an appeal from the denial of habeas relief. The district court denied the motion for lack of jurisdiction, ruling that the time limit in Rule 4(a)(1) is mandatory and jurisdictional because it derives from a congressionally-enacted statute and that Rule 60(b) cannot provide a basis for "circumvent[ing] [Rule 4's] time requirements and extend[ing] or re-open[ing] the time for filing a notice of appeal." *Tanner v. Yukins*, No. 04-CV-71155-DT, 2012 WL 3109407, at *2 (E.D. Mich. July 31, 2012). In fact, extension of time and reopening of time for filing a notice of appeal are governed by Rule 4(a)(5) and by Rule 4(a)(6), respectively, under circumstances that did not pertain to Tanner's procedural position.

In denying the motion, the district court rejected the rationale of *Lewis v. Alexander*, 987 F.2d 392 (6th Cir. 1993), in which we held that "a district court may employ Rule 60(b) to permit an appeal outside the time constraints of [Rule 4(a)(5)]." *Id.* at 395-96. The court noted that *Lewis* had been criticized by several courts, including the Sixth Circuit in an unpublished decision, and that *Lewis* "appears to be invalid" in light of *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement . . . [and that we have] no authority to create equitable exceptions to jurisdictional requirements."). The district court also issued an alternative holding, to the effect that even if it did have jurisdiction to grant Tanner's motion, it would not do so because Tanner failed to explain why extraordinary circumstances prevented her from filing a motion pursuant to Rule 4(a)(5) for an extension of time. We ultimately granted a certificate of appealability on the issue of whether the district court erred in denying Tanner's Rule 60(b) motion. We now reverse.

## DISCUSSION

The Federal Rules of Appellate Procedure establish the deadlines that govern filings in this court. *See* Fed R. App. P. 1(a)(1). When a party is properly notified of a judgment, Rule 4(a)(1)(A) provides the party with 30 days to appeal. Fed. R. App. P. 4(a)(1)(A). Pursuant to Rule 4(a)(5), a movant may request a filing extension of up to 30 days upon a showing of "excusable neglect or good cause," Fed. R. App. P. 4(a)(5)(A)(ii), but must do so within the 30 days following the initial 30-day appeal period. Fed. R. App. P. 4(a)(5)(A)(i).

Notwithstanding Rule 4(a)(1)'s time limits for filing a notice of appeal, we conclude that, in this case, the district court had the authority to vacate and reinstate its denial of Tanner's habeas petition pursuant to Rule 60(b). That rule permits the court to grant relief from a final judgment, order, or proceeding for several enumerated reasons, as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Rule 60(b), which dates back to the earliest promulgation of the federal rules, "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-*

*Empire Co.*, 322 U.S. 238, 244 (1944)); *see also id.* at 234-35 (explaining that Rule 60(b) "is simply the recitation of pre-existing judicial power"); *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010) (stating that Rule 60(b) "is inherently equitable in nature," and "empowers district courts to revise judgments when necessary to ensure their integrity"); Fed. R. Civ. P 60(b), advisory committee notes (explaining that the committee "endeavored . . . to amend the rules to permit . . . the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules").

In this case, the district court concluded that this familiar mechanism was unavailable because granting Tanner's Rule 60(b)(6) motion would violate the congressionally-enacted "statutory limitations on the timing of appeals," *Bowles*, 551 U.S. at 210, limitations that the Supreme Court has recognized as "mandatory and jurisdictional." *Id.* at 209 (internal quotation marks and citation omitted). In *Bounds v. Smith*, 430 U.S. 817 (1977), however, the Supreme Court held that prison inmates possess a "fundamental constitutional right of access to the courts" that "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries. . . ." *Id.* at 828. Thus, if the district court were correct, this constitutional right would be meaningless: federal courts would be required to acquiesce in the unconstitutional conduct of prison guards who delay an inmate's ability to file an appeal until it is too late to meet the Rule 4 deadlines. In an extreme case, for example, the district court's decision might permit a prison guard to extort sexual favors from a prisoner with a looming filing deadline, in exchange for access to the law library, or prevent an inmate from use of the law library to prepare a timely action against that guard or his colleagues, and at the same time preclude a judicial remedy for the untimely filing that results. We reject the notion that Rule 4(a)(1) can be used to empower prison guards to deprive inmates of their right to appeal, while simultaneously disempowering federal courts from using Rule 60(b) to remedy the violation.

By the time Tanner filed her Rule 60(b)(6) motion for relief from judgment in this case, she had established a violation of her constitutional right of access by means of a jury's verdict—certainly a rare example of success for an inmate litigant. Given the § 1983 decision, we conclude that Rules 4(a)(1) and 4(a)(5) do not deprive the district court of jurisdiction to vacate

and reinstate its denial of Tanner's habeas petition pursuant to Rule 60(b)(6). Furthermore, as explained below, we further conclude that the Supreme Court's decision in *Bowles* is distinguishable from the situation presented here and does not change the analysis set out in *Lewis*.

The distinction arises from the recent history of Rule 4. Until 1991, Rule 4(a)(5) was the only provision in the Rules of Appellate Procedure that provided a means for seeking an extension of the appeal period on any basis. *See In re Stein*, 197 F.3d 421, 424 (9th Cir. 1999); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 514 (2d Cir. 1985); *Silvia v. Laurie*, 594 F.2d 892, 893 (1st Cir. 1979). The drafters of the Rules of Appellate Procedure, however, were aware of the long-standing "problem of litigants who fail to receive notice of entry of judgment before the appeal time runs out," and realized that Rule 4(a)(5) "would not aid a litigant who first learned of the entry of judgment more than 30 days after the original appeal time ran out." Wright & Miller, 16A Fed. Prac. & Proc. Juris. § 3950.6. The committee thus amended Rule 4 in 1991 to address "the plight of this litigant" by adding subdivision (6) to Rule 4(a). *Id.* This provision was the one at issue in *Bowles*.

Subdivision (6) of Rule 4(a) provides an avenue for relaxing the time period for appeal in cases in which the litigant failed to receive notice of entry of judgment. In its current form, which is "very similar" to the original text of the amendment, *id.*, Rule 4(a)(6) permits a district court to reopen the time to appeal for a maximum of 14 days if the moving party did not receive notice of judgment pursuant to Federal Rule of Civil Procedure 77(d) within 21 days of the entry of that judgment.[1] Fed. R. App. P. 4(a)(6). Rule 4(a)(6) also provides, however, that the district court may entertain a Rule 4(a)(6) motion only if it is filed within 180 days of the entry of the

---

[1] Federal Rule of Civil Procedure 77(d) works in tandem with Appellate Rule 4(a)(6) and was revised in 1991 to reflect that year's changes to Rule 4. *See* Fed. R. Civ. P. 77(d), advisory committee notes (stating that Rule 77(d) was "a companion to the concurrent amendment to Rule 4 of the Federal Rules of Appellate Procedure"). Rule 77(d) provides that a litigant's failure to receive notice of an entry of judgment "does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure 4(a)." Fed. R. Civ. P. 77(d)(2). The committee explained that, with the increase in clerk-office caseloads, the incidents of litigants failing to receive notice had increased, and the revisions were intended "to permit district courts to ease strict sanctions now imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment." *Id.* The revisions also incentivize (and provide a means for) a prevailing party to notify the losing party of a judgment in order to ensure that the appeals clock starts running. *Id.* One federal appeals court has characterized Rule 4(a)(6) and Rule 77(d) as "form[ing] a tessellated scheme." *Stein*, 197 F.3d at 426.

judgment, or within 14 days after receiving notice, whichever is earlier.  Fed R. App. P. 4(a)(6)(B).

The new provision thus established "an outer time limit of 180 days for a party who fails to receive timely notice of entry of a judgment to seek additional time to appeal," *id.*, advisory committee notes, and reflected the drafters' attempt to "balance[] the inequity of foreclosing appeals by parties who do not receive actual notice of a dispositive order against the need to protect the finality of judgments." *Bowles v. Russell*, 432 F.3d 668, 673 (6th Cir. 2005), *aff'd*, 551 U.S. 205 (2007) (quoting *Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*, 279 F.3d 1306, 1309 (11th Cir. 2002) (internal quotation marks and citation omitted)).  We have recognized that although the application of Rule 4(a)(6) "may work misfortune" in some cases, *id.* (quoting *Clark v. Lavallie*, 204 F.3d 1038, 1041 (10th Cir. 2000) (internal quotation marks omitted)), its "essence" is "finality of judgment." *Id.* (quoting *Clark*, 204 F.3d at 1041 (internal quotation marks omitted)).

In *Bowles*, the petitioner failed to receive timely notice of the denial of his habeas petition. *Bowles*, 432 F.3d at 669.  Once Bowles did receive notice, he sought relief pursuant to Rule 4(a)(6) from the time period in Rule 4(a)(1). *Id.* at 670.  His motion to reopen was filed properly within the 180-day period set out in the rule. *Id.*  The district court granted the motion but, inexplicably, directed Bowles to file his notice of appeal by February 27, 2003, which gave him 17 days to appeal, longer than the outer limit of 14 days prescribed by Rule 4(a)(6). *Id.* Bowles filed on February 26, "timely under the judge's order, but clearly not in compliance with the Rule." *Id.* at 670-71.  We held that the 14-day period in Rule 4(a)(6) "is not susceptible to extension through mistake, courtesy, or grace." *Id.* at 669.  The Supreme Court affirmed, holding that a federal appeals court lacks jurisdiction to decide the merits of a habeas appeal if the notice of appeal was filed with the district court more than 14 days after a Rule 4(a)(6) motion was filed. 551 U.S. at 206-07.

The decision in *Bowles*—that we lack jurisdiction to hear an appeal filed outside the 14-day period in Rule 4(a)(6), even where weighty equitable considerations exist—is understandable in light of the drafting history of Rule 4(a)(6), which demonstrates that the time periods in Rule 4(a)(6) are *themselves* an accommodation of equitable considerations. *See*

*Vencor Hosps.*, 279 F.3d at 1310. Unlike *Bowles*, however, the case before us does not involve a Rule 4(a)(6) notice problem. Here, as in *Lewis*, Tanner has asked the district court to grant her relief from judgment, pursuant to Rule 60(b)(6), *not* to solve a problem related to a failure to receive notice, but to restore her right to appeal, a right she lost due to the unconstitutional conduct of the guards at her prison. Even if Rule 4(a)(6) represents a mandatory and jurisdictional balancing of the interests of fairness and finality in cases in which there has been a notice problem, nothing in the drafting history of Rule 4 suggests that the drafters intended Rule 4(a)(6) to be the sole means of accommodating all equitable considerations that arise due to the Appellate Rules' strict filing deadlines. Our decision in *Lewis* thus controls this situation and, as *Lewis* demonstrates, Rule 60(b) is an appropriate means of considering equitable interests when a notice of appeal is filed late for reasons other than lack of notice.

As here, *Lewis* involved a habeas petitioner's Rule 60(b) motion in which Lewis asked the district court to vacate and reinstate its judgment denying his petition. 987 F.2d at 394. Lewis had received timely notice of the entry of judgment against him, and Lewis's attorney had mailed the notice of appeal within the 30-day period prescribed by Rule 4(a)(1). The notice, however, was docketed four days after the expiration of the 30-day period. *Id.* Lewis's attorney was unaware that the notice of appeal had not been timely docketed and therefore failed to move within the 30-day period in Rule 4(a)(5) for an extension of time. *Id.* When Lewis's attorney finally did realize that entry of the notice of appeal had been delayed, he filed a Rule 60(b)(1) motion for relief from judgment, asking the district court to vacate and reinstate its denial of Lewis's habeas petition, thereby reviving the time for appeal under Rule 4(a)(1)(A). *Id.* We concluded that this court "has no jurisdiction to review the lower court's decision on the merits if the notice of appeal is filed in an untimely manner," but that a "district court retains jurisdiction to proceed with matters that are in aid of the appeal." *Id.* (citation and internal quotation marks omitted). Hence, we held that the district court retained jurisdiction to utilize Rule 60(b) "to *revive a lost right of appeal*," *id.* at 396 (emphasis added), and that, upon granting a Rule 60(b) motion, the district court should vacate and reinstate the unfavorable decision. *Id.* at 395. Rule 60(b) thus differs from Rule 4(a)(6) because it provides the district court with a mechanism for accommodating equitable considerations other than the notice problems at the heart of Rule 4(a)(6); it "confers upon the district court a broad equitable power to 'do justice.'" *Johnson*,

605 F.3d at 336.   Accordingly, we conclude that *Bowles* did not invalidate our reasoning in *Lewis*.

*Lewis* thus remains good law in this circuit, and the district court in this case erred in concluding otherwise.  A review of the court's analysis shows why.  In its opinion, the district court cited two Sixth Circuit cases in which we discussed, but did not overturn, *Lewis*:  *Brown v. United States*, No. 11-5293, 2011 WL 3555630 (6th Cir. Aug. 3, 2011), and *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678 (6th Cir. 1999).  *Brown* is an unpublished decision, which addressed whether a Rule 60(b)(6) motion can provide a basis for extending the period set out in Appellate Rule *4(a)(6)*.  It lacks precedential value and, in any event, did not address the provisions of Rule 4 that are at issue in this case.  *FHC Equities*, if anything, supports an outcome contrary to that for which the district court cited it.  *See* 188 F.3d at 683-87. In that case, we analyzed in detail whether an attorney's "misinterpretation of rules constitutes 'mistake' justifying the setting aside of a judgment under Rule 60(b)."  *Id.* at 687.  Although we concluded that "[t]he district court did not abuse its discretion in refusing to rule that the attorney's misinterpretation of the rules was a 'mistake' within Rule 60(b)," our analysis actually *presumed* the availability of Rule 60(b) as a basis on which to provide a party with relief from Rule 4(a) in some circumstances.  *Id.*  We held only that the attorney error in *FHC Equities* was insufficient to grant that relief.  *Id.*   Thus, *FHC Equities* did not overrule *Lewis*; in fact, it followed *Lewis*.

The district court also briefly alluded to "several courts" that have "criticized" *Lewis*, but cited only to *Brown* and *FHC Equities*, which, as noted, are Sixth Circuit cases.  *Brown* itself cited no cases from other circuits, and *FHC Equities* cited a single Eighth Circuit case that disavowed *Lewis*.  *See FHC Equities*, 188 F.3d at 684 (citing *Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 361 (8th Cir. 1994)).  *Zimmer*, however, addressed whether Rule 60(b)(6) can provide a basis for extending the time period set out in Appellate Rule 4(a)(6).  *Zimmer*, 32 F.3d at 361.  By failing to acknowledge the distinction between notice and non-notice cases under Rule 60(b)(6), the district court failed to substantiate its determination that *Lewis* is invalid.

Moreover, we have found no cases decided by our sister circuits post-*Bowles* that provide support for the district court's decision.  Since *Bowles*, only the Fifth Circuit has concluded that

Rule 60(b)(6) is unavailable as a means of providing relief to an individual who missed the appellate deadlines in Rules 4(a)(1) and 4(a)(5).[2] *See Perez v. Stephens*, 745 F.3d 174, 177 (5th Cir. 2014). *Perez*, however, involved a habeas petitioner who lost his right to appeal the denial of his habeas petition due to his attorney's unilateral decision to waive his client's right to appeal. *Id.* at 176. Although the attorney's conduct may have been egregious, *Perez* did not involve the type of unconstitutional conduct by a state actor that is at issue in this case. It is therefore unpersuasive. Moreover, the *Perez* opinion created a circuit split. The Ninth Circuit had previously held in *Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012), that *Bowles* did not bar a district court from granting relief pursuant to Rule 60(b)(6) from the time limits in Rule 4(a)(1) and Rule 4(a)(5) because "Mackey [sought] relief pursuant to Rule 60(b)(6) to cure a problem caused by attorney abandonment and not by a failure to receive Rule 77(d) notice." *Id.* at 1253.

For all of the foregoing reasons, we conclude that the district court improperly determined that it lacked jurisdiction to rule on Tanner's Rule 60(b)(6) motion and erred in failing to recognize that *Lewis* remains binding precedent post-*Bowles*. That leaves the question of the district court's determination on the merits.

The district court provided an alternative holding, ruling that even if it had jurisdiction to grant Tanner's Rule 60(b)(6) motion, it would deny the motion because Tanner failed to demonstrate that extraordinary circumstances prevented her from timely filing a Rule 4(a)(5) motion to extend the time in which to file an appeal, a decision that we review for abuse of discretion. *See Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011) (internal quotation marks and citation omitted).

---

[2]In *Perez*, the Fifth Circuit cited several cases that it believed supported its conclusion that Rule 60(b)(6) is unavailable as a means of providing relief from the time limits in Rule 4(a)(1) and Rule 4(a)(5). *See Perez*, 745 F.3d at 180 (citing cases). These cases, however, are either unpublished and therefore of limited persuasive value, or are distinguishable because they involve requests for extensions from the time period in Rule 4(a)(6).

Relief pursuant to Rule 60(b)(6) is available "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule" and "only as a means to achieve substantial justice." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (internal quotation marks and citation omitted). The rule contemplates situations where "something more . . . is present" than those situations contemplated by the other clauses in the rule. *Id.* (internal quotation marks and citation omitted). "The 'something more,' . . . must include unusual and extreme situations where principles of equity *mandate* relief." *Id.* (emphasis in the original). In considering the merits of a Rule 60(b) motion, a district court is required to "intensively balance numerous factors." *See Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001).

In this case, however, the district court did not undertake "intensive balancing" of "numerous factors," instead making the conclusory statement that it would deny the motion because Tanner "offered no explanation as to why she was unable to properly file a motion for an extension of time in which to file her notice of appeal as provided by Federal Rule of Appellate Procedure Rule 4(a)(5)." The omission of meaningful analysis led the court to a clear error in judgment.

The extraordinary circumstance in this case should have been obvious to the court and arises from the timeline of the appeal. To recap that sequence: Tanner's habeas petition was denied by the district court in an opinion dated November 7, 2005, and judgment was entered on November 8. Her notice of appeal was therefore due no later than December 8 but, because of circumstances beyond her control at the prison facility, was not delivered to prison officials— and thereby effectively filed under *Houston v. Lack*[3]—until December 9, one day late. The district court clerk nevertheless received the notice of appeal on December 13 and entered it three days later, on December 16, without notifying Tanner—or, presumably, the district judge— that it was late-filed. The district judge granted both Tanner's application to proceed *in forma pauperis* and her motion for a certificate of appealability on December 23, again without noting that the order was actually a nullity because the notice of appeal was untimely. Tanner thus had no reason to think that her appeal was flawed until we issued the show-cause order on January

---

[3]487 U.S. 266, 276 (1988) (holding that an inmate's notice of appeal "[is] filed at the time petitioner deliver[s] it to the prison authorities for forwarding to the court clerk").

20, 2006, almost two weeks beyond the date when a motion to extend under Rule 4(a)(5)(A) would have been timely, *i.e.*, January 7.

We would reasonably expect a lawyer with basic knowledge of the Rules of Appellate Procedure to track the progress of a client's appeal, keep apprised of crucial dates and, if necessary, secure a timely extension under Rule 4(a)(5)(A), although counsel in *Lewis* failed to realize that his client's notice of appeal was untimely until after the time for seeking an extension had passed, and yet managed to secure equitable relief under Rule 60(b)(1). *See Lewis*, 987 F.3d at 394-96. How much more deserving of an equitable outcome is the petitioner here, self-described as functionally illiterate but clearly committed to pursuing her remedies in court, as shown by her diligence at each step of a long and sometimes convoluted path of litigation, most of it accomplished without the benefit of counsel.

In reversing the order denying Tanner's Rule 60(b) motion, we emphasize that on remand the district court will be granting relief from judgment "to revive a lost right of appeal," *Lewis*, 987 F.3d at 396, and not granting an extension of time under Rule 4(a)(5). The court is directed to vacate the judgment, entered on November 8, 2005, that denied Tanner's petition for a writ of habeas corpus and to re-enter the judgment, thereby starting anew the 30-day period under Rule 4(a)(1)(A) in which to file a notice of appeal. Given Tanner's continued incarceration, a *timely* notice that she wishes to renew her original notice of appeal will suffice to re-establish jurisdiction.

## CONCLUSION

For the reasons set out above, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

JULIA SMITH GIBBONS, Circuit Judge, dissenting. Because I believe that the majority opinion misconstrues Supreme Court precedent and misapplies the required standard of review, I respectfully dissent.

I.

With its decision in *Bowles v. Russell*, 551 U.S. 205 (2007), the Supreme Court "changed the legal landscape for Rule 60(b) motions." *In re Sealed Case*, 624 F.3d 482, 486 (D.C. Cir. 2010). In doing so, the Court used unmistakably broad language: "[T]he time limits for filing a notice of appeal are jurisdictional in nature" and the courts "ha[ve] no authority to create equitable exceptions to jurisdictional requirements." *See Bowles*, 551 U.S. at 206, 214. That decides the case before us: the district court had no authority under Rule 60(b)(6) to reissue its judgment, and its opinion should be affirmed.

The majority attempts to distinguish *Bowles* and demonstrate that this Court's decision in *Lewis v. Alexander*, 987 F.2d 392 (6th Cir. 1993), still controls. The asserted distinction hinges on the fact that the motion at issue in *Lewis* was under Appellate Rule 4(a)(5)—a motion for extension of time to file a notice of appeal—while *Bowles* dealt with a Rule 4(a)(6) motion, which seeks to reopen the window of time to file an appeal. The majority extrapolates as follows: "Unlike *Bowles* . . . the case before us does not involve a Rule 4(a)(6) notice problem . . . [o]ur decision in *Lewis* thus controls this situation." For the majority, the present case involves a special situation—and remains untouched by *Bowles*—because the Rules' drafters intended Rule 60(b) to "provide[] the district court with a mechanism for accommodating equitable considerations other than the notice problems at the heart of Rule 4(a)(6)."

But, no matter how we read the drafters' intent, we are bound by the Supreme Court's reading. And in *Bowles*, the Court did not confine itself to Rule 4(a)(6). It did not distinguish between time limits that derive from Rule 4(a)(6) from those that originate in Rule 4(a)(5), as in *Lewis*, or Rule 4(a)(1), as in the present case. Rather, the Court's opinion spoke broadly of "time

limits for filing a notice of appeal," *see Bowles*, 551 U.S. at 206, so as to encapsulate all of the limits contained in Rule 4, a rule which "carries [28 U.S.C.] § 2107 into practice," *id.* at 208.  No matter the source of the time limit within Rule 4, *Bowles* tells us that the limit is jurisdictional. That leaves courts with no authority to create equitable exceptions, no matter how compelling the circumstances.

The majority looks to our sister circuits, but case law from elsewhere in fact weighs against the majority's attempt to artificially cabin *Bowles*.  In *In re Sealed Case*, a unanimous panel of the D.C. Circuit explained at length why *Bowles* prohibits a litigant from using Rule 60(b) to avoid Rule 4(a)'s time limits.  624 F.3d at 486.  Noting the "unequivocal and uncompromising terms" in which the Supreme Court spoke, the panel explained that courts in the post-*Bowles* legal landscape "lack[] power to carve out equitable exceptions to jurisdictional statutory requirements," and that Rule 60(b) did nothing to confer such power.  *See id.*

The vast majority of the other circuits have held likewise.  The Second Circuit refused to review an order denying a Rule 60(b)(6) motion because "[c]ompliance with Rule 4(a) is 'mandatory and jurisdictional.'"  *DiGrolamo v. United States*, 279 F. App'x 37, 38 (2d Cir. 2008) (per curiam) (alteration in original) (quoting *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415 (2d Cir. 2004)).  The Third Circuit, in *Baker v. United States*, 670 F.3d 448, 456 (3d Cir. 2012), stated unequivocally that the time limit in Rule 4(a)(1) is "jurisdictional[] and . . . not subject to equitable modification."   In *White v. Jones*, 408 F. App'x 293, 295 (11th Cir. 2011), the Eleventh Circuit expressed serious doubts, in light of *Bowles*, that a litigant could "somehow . . . file a Rule 60(b) motion to restart the appeal clock."

The majority tries but fails to undermine some of this authority.  In *Perez v. Stephens*, 745 F.3d 174, 177–78 (5th Cir. 2014), the Fifth Circuit held that a petitioner could not use a Rule 60(b)(6) motion to circumvent Rule 4(a)(5)'s time limit.  The majority finds *Perez* unpersuasive because it "did not involve the type of unconstitutional conduct by a state actor that is at issue in this case."  That is beside the point.  The Supreme Court has made clear that, no matter what the conduct at issue and no matter why an appellate court may wish to create an equitable exception, an appellate court is not free to do so under any circumstances.  The Fifth Circuit held true to this mandate.

In the face of this significant contrary authority, the majority cites just one case that provides actual support for its position. *Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012) focuses on the differences between Rule 4(a)(6) and other portions of Rule 4(a) in order to justify departure from *Bowles*. It is unsurprising that this reasoning—unpersuasive for the reasons discussed—has been firmly rejected by the overwhelming majority of circuits.

*Bowles* gives us no license to grant any equitable exceptions to the time limits in Rule 4. I dissent from the majority's attempt to read holes in the Supreme Court's clear ruling where none exist.

II.

Even if we had the power to grant an exception for "extraordinary circumstances," I would hold that no such circumstances exist here and would affirm the district court's denial of the Rule 60(b)(6) motion.

As the majority acknowledges, our review of the district court's decision is for abuse of discretion, *see Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009), which exists when the district court "applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment," *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011) (internal quotation marks omitted). The district court did none of these things in reaching its conclusion, and Tanner did not meet the especially high bar that litigants must meet in order to prevail under Rule 60(b). "[R]elief under Rule 60(b) is circumscribed by public policy favoring the finality of judgments and [the] termination of litigation," *Blue Diamond Coal Co. v. Trs. of UMBA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks omitted), especially under Rule 60(b), "which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Id*. (internal quotation marks omitted). "Such circumstances will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

The district court properly applied Rule 60(b) and did not make a clear error in adjudicating Tanner's claim. The district court explained its decision as follows:

> While [Tanner] has shown that extraordinary circumstances outside of her control, *i.e.* the unconstitutional actions of prison officials, prevented her from timely filing her notice of appeal, she has offered no explanation as to why she was unable to properly file a motion for an extension of time in which to file her notice of appeal as provided by Federal Rule of Appellate Procedure 4(a)(5).

*Tanner v. Yukins*, No. 04–CV–71155, 2012 WL 3109407, at *3 (E.D. Mich. July 31, 2012).

Tanner had until January 7, 2006, to file a motion for an extension of time, and the lock-down ended on December 8, 2005. She therefore had a period of time—after the unconstitutional conduct had ended—during which she could have filed. The district court did not abuse its discretion in deciding that the circumstances that existed during that time, resulting in Tanner's missing the deadline, were not extraordinary. The majority focuses on the district court's failure to notify Tanner that her notice of appeal was untimely, holding that this justifies relief for a litigant who is "functionally illiterate but clearly committed to pursuing her remedies in court." But the district court did not abuse its discretion in holding otherwise.

In fact, this Court's precedents in an analogous area lend support to the district court's conclusion. In the context of equitable tolling of the one-year deadline for filing a petition for habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), this Court has held that combinations of illiteracy, *pro se* status, lack of access to legal materials, ignorance of the law, and reliance on legal assistance from others do not amount to extraordinary circumstances. *See, e.g.*, *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("[W]e note that Keeling's pro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance."); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750–52 (6th Cir. 2011) (stating that a combination of a prisoner's *pro se* status, limited law-library access, and inability to access trial transcripts did not amount to an extraordinary circumstance); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding that a petitioner is not entitled to equitable tolling on the basis of his ignorance of the law and legal process, his lack of education, his functional illiteracy, or his reliance on prison paralegals).

The district court properly applied the law on Rule 60(b) relief, permitting us to disturb its decision only if we detect "a clear error of judgment." *Randleman*, 646 F.3d at 351 (internal quotation marks omitted). The district court did not commit such an error in deciding that—though the circumstances preventing Tanner from filing a timely notice of appeal were extraordinary and troubling—the circumstances surrounding the late filing of the motion to extend time did not give rise to the type of "unusual and extreme situation" that the law requires. *Olle v. Henry Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990). The district court did not, therefore, abuse its discretion.

III.

For the foregoing reasons, I would affirm the district court's decision denying Tanner's motion.