NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0454n.06

No. 15-3668

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REAL PROPERTY 10338 MARCY ROAD | ) | |
| NORTHWEST, CANAL WINCHESTER, | ) | ON APPEAL FROM THE UNITED |
| OHIO, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendant, | ) | |
| | ) | |
| LEVI H. WINSTON, | ) | |
| | ) | |
| Claimant-Appellant. | ) | |

BEFORE:    DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    Following Levi H. Winston's convictions for money laundering and conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana, the government filed a complaint for forfeiture of real property owned by Winston and located at 10338 Marcy Road in Canal Winchester, Ohio. In its complaint, the government alleged that the property "was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate the trafficking of a controlled substance." Eventually, the government moved for summary judgment, and the district court granted that motion. Winston now appeals, arguing that he has established at least a genuine

dispute of fact regarding whether the subject property was purchased with legitimate funds. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Winston admits that he has not been a model citizen in many respects. In fact, he concedes that he previously had been in federal custody for some period of time prior to 2009. Additionally, he does not contest the fact that he pleaded guilty in May 2013 to charges of money laundering and conspiracy to possess with intent to possess more than 1,000 kilograms of marijuana between October 2011 and March 2013, convictions for which he received a second prison sentence of 135 months. The facts underlying that later conspiracy charge established that Winston orchestrated the transport of large shipments of marijuana from the Texas-Mexico border by hiding the drugs in pieces of heavy equipment that would be loaded onto flatbed tractor-trailers and driven to Columbus, Ohio. Once in the Columbus area, Winston would arrange for the equipment to be offloaded from the transport vehicles, for the drugs to be removed from their hiding places in the equipment, and for the marijuana to be taken to warehouses that Winston rented in the name of an associate for storage pending later distribution.

In September 2012, surveillance revealed that a 20-foot by 9-foot by 9-foot crate was moved from one of Winston's rented warehouses to a Columbus residence owned by Robin Adams. Two months later, in November 2012, by use of a tracking device that had been attached to Winston's automobile, authorities determined that Winston stopped in the area of 10338 Marcy Road Northwest, Canal Winchester, Ohio—another property owned by Adams. Indeed, subsequent investigation revealed that Winston later purchased the Marcy Road property from Adams for $36,500. According to a statement made under penalty of perjury by a special

agent with the United States Department of Homeland Security who was involved in narcotics investigations in the Columbus area:

> On November 14, 2012, Winston made an initial payment of $14,500.00 in cash. The Contract for Deed was signed by Adams and Winston on November 29, 2012. Winston paid the balance of $22,000.00 in four (4) installment cash payments as follows: December 11, 2012, $1,000.00; December 12, 2012, $1,000.00; January 2, 2013, $10,000.00; and, the final payment of $10,000.00 in early 2013.

After Winston then pleaded guilty in May 2013 to criminal charges stemming from his drug-trafficking activities, the government filed this civil action seeking forfeiture of the Marcy Road property. In the forfeiture complaint, the government sought to tie the subject property to Winston's drug trafficking and alleged that the Marcy Road real estate either "was used or intended to be used in exchange for controlled substances," or "represents proceeds of trafficking in controlled substances," or "was used or intended to be used to facilitate the trafficking of a controlled substance."

Winston moved to dismiss the action, claiming that the government alleged no facts linking the property to any illegal activity. Believing that the property nevertheless represented proceeds of illegal drug trafficking, the government responded by moving for summary judgment in its favor, a motion that Winston opposed. In the end, the district court granted the government's motion for summary judgment, concluding that the government had shown, by a preponderance of the evidence, that Winston had not earned sufficient, legitimate income in 2012 that would have allowed him to purchase the Marcy Road property without tapping into funds obtained through drug trafficking. Stated differently, the district court believed that the evidence established unequivocally that "Winston's illegal drug operation is the only plausible source of income, supported by evidence in the record, from which Winston could have

purchased the [real estate]." From that determination that resulted in the forfeiture of his property, Winston now appeals.

## DISCUSSION

### Standard of Review

Given the posture of this case, the relevant issue before us on appeal is not whether Winston has shown definitively that the Marcy Road property was purchased with legitimate funds; instead, our task simply is to determine whether Winston has adduced evidence sufficient to raise a genuine dispute as to the legitimacy of his real estate transaction with Robin Adams. Indeed, the mandate of Rule 56(a) of the Federal Rules of Civil Procedure is clear: summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When evaluating the propriety of a grant of summary judgment, we view the evidence presented in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the moving party satisfies its initial burden of showing an absence of genuine disputes of material fact, "the nonmoving party must then present significant probative evidence to do more than show that there is some metaphysical doubt as to the material facts to defeat the motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citation and internal quotation marks omitted).

### Government's Theories of Forfeiture

In pertinent part, the civil forfeiture provisions of the Controlled Substances Act, 21 U.S.C. § 881(a), provide that the following *shall be* subject to forfeiture to the United States:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable

to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

21 U.S.C. § 881(a)(6) and (7). "One theory calls for forfeiture of any real property that is used to *facilitate* the commission of a drug crime. *See* 21 U.S.C. § 881(a)(7). The other theory is based on the premise that the real estate was acquired with drug sale *proceeds*. *See* 21 U.S.C. § 881(a)(6)." *United States v. Real Prop. in Section 9, Town 29 N., Range 1 W., Twp. of Charlton, Otsego Cty., Mich.*, 308 F. Supp. 2d 791, 798 (E.D. Mich. 2004) (emphasis added). At least in its complaint initiating this *in rem* action, the government relied on both of these provisions to justify the forfeiture of the Marcy Road property.

**Government's Burden of Proof in Forfeiture Actions**

Prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, the United States, when seeking civil forfeiture of property, was required to demonstrate only "probable cause to believe that the property is subject to forfeiture." *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 661-62 (6th Cir. 2003). Now, after CAFRA, "the burden of proof is on the Government to establish, *by a preponderance of the evidence*, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1) (emphasis added). Moreover, if the government proceeds against certain property pursuant to 21 U.S.C. § 881(a)(7)'s "facilitation theory," it is required to "establish that there was a *substantial connection* between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added). Because the government was unable to adduce any proof whatsoever of drug sales, drug storage, or drug conversations at the Marcy Road property, it has abandoned, both in the district court and

on appeal, the facilitation prong of its forfeiture claim. However, the government seeks to justify the property forfeiture under a "proceeds theory," by arguing "that the real estate was acquired with drug sale proceeds." *See Real Prop. in Section 9*, 308 F. Supp. 2d at 798.

The forfeiture statutes do not contain language specifically indicating that the "substantial connection" between a drug offense and the subject property that is required under a "facilitation theory" also is necessary under a "proceeds theory." Nevertheless, in *United States v. One 1984 Cadillac*, 888 F.2d 1133, 1136 (6th Cir. 1989), we recognized, albeit in *dicta*, that 21 U.S.C. § 881(a)(6)'s legislative history requires the use of the "substantial connection" burden in forfeiture actions involving proceeds of illegal drug activities. Then, in *United States v. Fifty-Three Thousand Eighty-Two Dollars in U.S. Currency, $53,082.00*, 985 F.2d 245, 250 (6th Cir. 1993), we stated explicitly that 21 U.S.C. § 881(a)(6) "requires that the government show probable cause of 'a substantial connection between the property and the underlying criminal activity.'" (Citation omitted.)

Even if we were not convinced that our prior precedents recognized the incorporation of the "substantial connection" standard into "proceeds theory" forfeiture proceedings, the legislative history surrounding the addition of subsection (a)(6) to the federal forfeiture statute makes it clear that the government must show just such a "substantial connection" between the property to be forfeited and illegal drug-trafficking activity, even under a "proceeds theory." Congress's joint explanatory statement regarding the Senate bill that added subsection (a)(6) to 21 U.S.C. § 881 provided:

> Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited *only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent*. ... [The Senate amendment] provides for forfeiture of property which is the proceeds of an illegal drug transaction *only if there is a traceable connection [between] such property and the illegal exchange of controlled*

> *substances.* Thus if such proceeds were, for example, commingled with other assets, involved in intervening legitimate transactions, or otherwise changed in form: they would still be subject to forfeiture, *but only to the extent that it could be shown that a traceable connection to an illegal transaction in controlled substances existed.*

Joint Explanatory Statement of Titles II and III, Psychotropic Substances Act of 1978, Pub. L. 95-633, *reprinted in* 1978 U.S. Code Cong. & Admin. News 9518, 9522  (emphasis added).

Nothing in CAFRA's imposition of a more stringent burden of proof upon the government in civil-forfeiture actions would lead us to conclude that the preponderance-of-the-evidence standard would not incorporate as well the requirement that the United States demonstrate a substantial connection between illegal drug activity and the proceeds of such activity that the government seeks to confiscate.  Thus, in this case, under CAFRA's burden-of-proof provision, 18 U.S.C. § 983(c)(1), the government is required to establish by a preponderance of the evidence that the Marcy Road property was purchased by Winston with cash that had a "substantial connection" to an unauthorized drug sale.[1]

### Application of the Relevant Law to the Facts of Winston's Case

In many cases, proving the required "substantial connection" between property and proceeds of drug trafficking is not difficult.  For example, in *Real Property in Section 9*, 308 F. Supp.2d at 807, a witness testified during her sworn deposition that "she would, on more than

---

[1] In its opinion granting summary judgment to the government in this case, the district court cited *United States v. $118,170.00 in U.S. Currency*, 69 F. App'x 714, 717 n.1 (6th Cir. 2003), for the proposition that the government "is not required to prove a direct or substantial connection between the subject property and a specific drug transaction" when it advances a "drug proceeds theory."  For a number of reasons, the district court's reliance upon such language from the cited opinion is inapposite to the dispute now before us.  First, we reiterate that unpublished opinions carry absolutely no precedential value, and statements of law contained within them have no relevance outside of that particular case. *See, e.g.*, *Tanner v. Yukins*, 776 F.3d 434, 441 (6th Cir. 2015).  Second, *$118,170.00 in U.S. Currency* neither discussed nor gave due deference to contrary *published* opinions of this circuit and to the clearly expressed intent of Congress in adding subsection (a)(6) to 21 U.S.C. § 881.  Third, even the statement from our prior unpublished opinion upon which the district court sought to rely does not support the government's assertion that the forfeited proceeds need not be traceable to *any* drug transaction.  Instead, the relevant language in *$118,170.00 in U.S. Currency* states only that "the Government need not prove a substantial connection to a *specific* drug transaction when it advances a drug proceeds theory."  69 F. App'x at 717 n.1 (emphasis added).

one occasion, make land contract payments . . . from the money received from drug sales."

Here, however, no such direct evidence of a "substantial connection" between illegal drug

activity and the money paid by Winston for the Marcy Road property exists. As a result, the

government relies upon circumstantial evidence and argues in its appellate brief:

> [T]he United States may meet its burden by showing that the claimant's
> "legitimate income [ ] is insufficient to explain the large amount of property
> seized." *[$]174,206.00 in United States Currency*, 320 F.3d at 662. The
> claimant's "record of drug activity is a highly probative factor in the forfeiture
> calculus." *United States v. $67,220.00 in United States Currency*, 957 F.2d 280,
> 286 (6th Cir. 1992). The claimant's "use [of] cash for large purchases" is also
> probative. *United States v. Carrell*, 252 F.3d 1193, 1201 (11th Cir. 2001)
> (internal quotation marks omitted).

Although each of these three statements relied upon by the government has legal and theoretical

validity, the context in which each factor was applied in the cited cases must be understood.

Indeed, a close examination of those cited cases helps explain why the three factors are not

applicable to Winston's situation, or at the very least, establish that Winston identified a genuine

dispute of material fact precluding summary judgment in favor of the government.

Initially, it is noteworthy that both *Carrell* and *$67,220.00 in U.S. Currency* were decided

by courts using the more lenient probable-cause standard of proof applied in forfeiture cases

decided prior to the enactment of CAFRA. In *Carrell*, the Eleventh Circuit noted explicitly that

the probable cause necessary to justify a civil forfeiture at that time required only "reasonable

grounds for belief of guilt, supported by less than prima facie proof, but more than mere

suspicion," 252 F.3d at 1200 (citation and internal quotation marks omitted), while recognizing

that a requirement that a fact or claim be proven "by a preponderance of the evidence [is] a more

stringent standard." *Id.* at 1201 (citing *United States v. Four Million, Two Hundred Fifty-Five

Thousand Dollars in U.S. Currency*, 762 F.2d 895, 904 (11th Cir. 1985) (internal quotation

marks omitted)). Likewise, in *$67,220.00 in U.S. Currency*, we relied upon the then-applicable

less-stringent standard to uphold the government's confiscation of cash from a claimant, holding that the government's burden of proof required it to establish only "probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance." 957 F.2d at 283 (citation omitted).

Moreover, despite the government's citations to *Carrell* and *$67,220.00 in U.S. Currency* for the propositions that use of cash and a record of former drug activity are indications that property was acquired with proceeds from drug sales, those cases presented facts much different and more egregious than the situation involving Winston's purchase of the Marcy Road property. In *Carrell*, for example, the government sought forfeiture of two separate parcels of real property purchased by Homer Carrell, the father of the claimant in that case. However, Carrell "had no other legitimate source of income" other than money from the sale of marijuana and cocaine, *Carrell*, 252 F.3d at 1201, and "ha[d] been engaged in the large scale distribution of cocaine and marijuana in the Northern District of Alabama since at least 1980." *Id.* at 1201-02, n.9. Nevertheless, he was able to provide $10,000 in cash to purchase one piece of real property and 16 used cars (all purchased with drug proceeds) for the other property. *Id.* at 1196. In light of those facts, the court justifiably concluded that "[t]here is ample evidence of a substantial connection between Homer Carrell's marijuana and cocaine sales and the subject properties to establish probable cause" for the forfeiture. *Id.* at 1202.

In *$67,220.00 in U.S. Currency*, we also noted the probative nature of a claimant's "record of drug activity." 957 F.2d at 286. Nothing in that case, however, would support an assertion that the mere fact that a claimant previously had been convicted of a drug offense necessarily proves the substantial connection between property and illegal activities that would establish, by a preponderance of the evidence, that the property should be forfeited. Indeed,

were such a broad generalization considered sufficient to justify a forfeiture, no individual who had been convicted previously of a drug offense ever would be above suspicion when purchasing real or personal property, regardless of the possible legitimate sources of the funds used in the transaction. Placement of such a permanent, immutable stigma upon an individual contravenes all notions of fair play and due process.

Finally, the government's citation to *$174,206.00 in U.S. Currency* for the proposition that a right to forfeiture may be shown by the fact that a claimant's "legitimate income . . . is insufficient to explain the large amount of property seized" fails to give effect to all the language used in the opinion. 320 F.3d at 662. Indeed, our opinion in *$174,206.00 in U.S. Currency* includes qualifying language that explains that evidence of insufficient legitimate income must be "unrebutted by *any evidence* pointing to any other source of legitimate income" before a judgment of forfeiture may be entered. 320 F.3d at 662 (emphasis added). In *$174,206.00 in U.S. Currency*, the government offered proof that the claimants in that case had accumulated only $31,142 in legitimate income over a five-year period, yet had $174,206 in cash stored in safe deposit boxes. *Id.* Because the claimants in that case could not rebut the allegation that the large sum of money was derived from illegitimate sources, forfeiture of that property was deemed to have been proper.

A radically different scenario is presented by the facts in the present case. It is true that Winston made cash payments of $14,500, $1,000, $1,000, $10,000, and $10,000 between early November 2012 and January 2013 in order to purchase the property that the government sought to have forfeited. It also is true that Winston previously had been convicted of and had been incarcerated for drug-trafficking offenses. Unlike the situations present in other cases, however, absolutely no evidence, other than blatant speculation, tied the $36,500 Winston paid for the

Marcy Road property to any prior illegal activity. In fact, evidence before the district court, and known by the prosecution prior to the filing of its complaint for forfeiture, showed that Winston received legitimate income of $12,132 in the last four months of 2009 (the year he was released from prison in mid-August after serving time for a 1992 criminal conviction); $40,412 in 2010; $66,607 in 2011; and $150,000 in 2012. Nor is there evidence in the record that Winston lived a lavish lifestyle that would have led him to squander that money. In fact, a March 2013 pretrial-services report estimated Winston's fixed monthly expenses at $1,662 and his net positive monthly cash flow at more than $8,000. Such information clearly could serve to rebut the presumption that only ill-gotten gains could account for the funds expended by Winston to purchase the Marcy Road property.

Additionally, Winston himself offered in a sworn affidavit that "[n]one of the purchasing funds were from illegal activity, nor was Adams given drugs in exchange for any portion of the $36,500.00 purchase price." In support of that assertion, Winston also stated:

> In order to explain the amount of cash on hand that each of the six or seven installment payments entailed, I have copies of my 2009, 2010 and 2011 tax transcripts (2012 taxes have not been filed due to my present incarceration). The attachment is simply to demonstrate a legitimate source of income substantially above each payment made for the duration of the "Contract of Deed."

At the very least, therefore, Winston has adduced sufficient facts to create a genuine dispute over whether the cash payments to Robin Adams for the property were connected to the sale of any controlled substance.

Even in the face of Winston's statements and documentary evidence, the government argues that we should affirm the judgment of the district court because Winston's affidavit contains only legal conclusions, not facts, and, in any event, was offered only in support of Winston's motion to dismiss, not in response to the government's motion for summary

judgment. The United States further contends that no credence should be accorded the information in the pretrial-services report because such information consists of inadmissible hearsay and was not sworn to by the claimant. None these challenges to the evidence offered by Winston has merit.

First, the government's assertion that Winston's affidavit contains only conclusions of law and no factual support for the statements made is erroneous. Admittedly, in one paragraph of the affidavit, Winston does state simply that "[n]one of the purchasing funds were from illegal activity." As explained above, however, that seemingly bald assertion was supported by attachments to the affidavit that summarized income tax information from 2009 through 2011. Additionally, Winston included a copy of the report prepared by pretrial services based upon a meeting with Winston on the very day he was arrested on the most recent drug-trafficking charge.

Second, there is no merit to the government's claim that the district court, or this court in its *de novo* review of the grant of summary judgment, cannot consider Winston's affidavit because it was offered in support of only his motion to dismiss, not in response to the government's motion for summary judgment. In his response to the summary judgment motion, however, Winston made the following statements:

> Claimant has filed an affidavit and tax transcripts with the Court on this matter. Claimant would ask that the Plaintiff refer to these filings for the source of the currency which purchased Defendant Real Property.

> \* \* \*

> Claimant has filed information with the Court that genuinely disputes the Plaintiff's calculations as to Claimant's earnings during the pertinent years at issue.

> \* \* \*

> Claimant has supplied the Court with material facts of his legitimate earnings . . . . Claimant, by sworn affidavit, avers that he purchased Defendant Real Property with legally earned income and provides the factual information to support this claim.

Such statements clearly incorporate into Winston's summary judgment filing the factual information contained as exhibits to his motion to dismiss the indictment. In any event, neither the district court nor this court is as narrowly restricted in its consideration of a summary judgment motion as the government would have us believe. In fact, Rule 56(c)(3) of the Federal Rules of Civil Procedure states explicitly that "[t]he court *need consider* only the cited materials, *but it may consider* other materials in the record." (Emphasis added.) Consequently, even if Winston had not referenced the motion-to-dismiss documents in his summary judgment response, we are free to consider any information contained in the court record when conducting our *de novo* review.

Third, the government's hearsay objection to consideration of the information in the pretrial-services report regarding Winston's 2012 income fails for at least two reasons. Substantively, the report falls under one of the recognized exceptions to the general prohibition to admission of hearsay evidence. Pursuant to the relevant provisions of Federal Rules of Evidence 803(8)(A)(iii) and 803(8)(B), a record or statement of a public office is admissible if it sets out factual findings from a legally authorized investigation, and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Here, the pretrial-services report was prepared by a government office after an authorized investigation into Winston's personal history and finances a full seven months prior to the government's filing of its complaint for forfeiture. *See* 18 U.S.C. § 3154. Moreover, that report contains sufficient indicia of reliability to satisfy the Federal Rule of Evidence 803(8) requirements given 18 U.S.C. § 3153(c)(3)'s implication that an individual may be prosecuted

"for a crime [of providing knowingly false information] in the course of obtaining pretrial release."

Furthermore, even if the pretrial-services report were not to fall within the hearsay exception set forth in Rule 803(8) and were to be considered hearsay, we would be justified in considering the information contained within the report because the government failed to raise a contemporaneous objection to Winston's reference to the evidence. As made clear in Federal Rule of Evidence 103(a)(1)(A), a party must lodge a timely objection to the admission of evidence in order to preserve any claim of error. The government's failure to object to the inclusion of the pretrial-services report in Winston's court filing thus results in a waiver of its argument concerning the admissibility of the evidence.

## CONCLUSION

All objections raised by the government to the evidence Winston offered to establish the legitimacy of the funds used to purchase the Marcy Road property are without merit. Thus, viewing all the evidence in the light most favorable to the Winston, we conclude that he has raised at least a genuine dispute of fact regarding the government's ability to establish a substantial connection between the proceeds used to purchase the property and any drug trafficking in which Winston engaged. We therefore REVERSE the district court's grant of summary judgment to the government and REMAND the matter for such further proceedings as are necessary.